## Ulizzi v. Trellis

*Louis M. Tarasi,* for plaintiffs
*Herbert Bennett Conner,* for defendant.

WETTICK, *J.*, July 19, 1993—Defendant's preliminary objections in the nature of a demurrer to plaintiffs' complaint are the subject of this opinion and order of court.

In January 1982, surgery was performed on Antoinette Ulizzi's left knee. In 1984, Ms. Ulizzi and her parents instituted a tort action against the surgeon and other health care providers at GD84-75 which included negligence and lack of informed consent claims. The complaint included allegations that the injuries which Ms. Ulizzi sustained caused her undue stress, anxiety, and/or distress and discomfort and impaired Ms. Ulizzi's psychological well-being.

This case was initially tried in 1987. The trial judge entered a nonsuit as to all defendants on all counts. The Pennsylvania Superior Court affirmed the trial court's ruling on the medical malpractice claim but found that plaintiffs presented sufficient evidence for a jury to consider the lack of informed consent claim which plaintiffs had raised only against the surgeon. The second trial, which was conducted in the spring of 1990 and considered only the lack of informed consent claim, resulted in a hung jury.

The underlying case was then assigned to me. On October 25, 1990, I entered an order which provided that the third trial of this remaining claim would be limited to liability. I advised counsel for the parties that if the jury returned a verdict in plaintiffs' favor, I would schedule at a later date a jury trial on the issue of damages. On March 11, 1991, the jury rendered a verdict in defendant's favor on plaintiffs' lack of informed consent claim.

Ms. Ulizzi was hospitalized for approximately six weeks in late 1989 in a psychiatric hospital under the care of defendant Emil S. Trellis, a psychiatrist. Plaintiffs' complaint in the present lawsuit alleges that prior to the third trial before me, counsel for the surgeon in the underlying action received from Dr. Trellis, without Ms. Ulizzi's knowledge or consent, a five-page expert report dated February 22, 1991 which addressed the following questions that the surgeon's counsel "posed": (1) To what extent did the surgery on the left knee cause the psychiatric condition that led to Ms. Ulizzi's hospitalization at St. Francis Medical Center in 1989; and (2) In what way, if any, did Ms. Ulizzi's perception of the surgeon's treatment contribute to this mental state?

The hospitalization at St. Francis under Dr. Trellis's care took place almost seven years after the surgery so the information in the expert report would be relevant only to defeat any damage claim that sought to link the 1989 hospitalization and any related psychiatric problems to the 1982 surgery. Also, the surgeon's pretrial statement lists Dr. Trellis only as a damage witness.

Count I of plaintiffs' complaint is a claim raised by Ms. Ulizzi for breach of confidentiality that is based primarily on 42 Pa.C.S. §5944 which protects communications made by a patient to a psychiatrist. Count

II is a claim raised by Ms. Ulizzi for intentional infliction of emotional distress based on allegations that the conduct of Dr. Trellis in preparing and releasing the February 11, 1991 report without the authorization of Ms. Ulizzi was extreme and outrageous conduct that was undertaken for the purpose of harming Ms. Ulizzi. Count III is a claim raised by the parents of Ms. Ulizzi for intentional infliction of emotional distress based on allegations that the February 22, 1991 report contained highly personal and irrelevant information concerning Ms. Ulizzi's parents that was released without authorization for the purpose of harming the parents.

Defendant contends that Count I of plaintiffs' complaint—breach of confidentiality—fails to state a cause of action because (1) Pennsylvania has never recognized a cause of action based on a physician's disclosure of confidential information, (2) Ms. Ulizzi has waived any confidentiality protections by including allegations in the underlying lawsuit against the surgeon for undue stress, anxiety, and/or distress, discomfort and impairment of her psychological well-being, and (3) the immunity granted to parties and witnesses in judicial proceedings protects Dr. Trellis's disclosure.

## I.

The Pennsylvania appellate courts have never decided whether a patient may bring a tort action based on a psychiatrist's disclosure of confidential information without the patient's consent. I conclude that under traditional principles of tort law, a patient may recover damages for injuries sustained from his or her psychiatrist's unauthorized disclosure of confidential information regarding the patient.

Plaintiffs base their tort action for disclosure of confidential information primarily on a December 22, 1989

amendment to the Judicial Code at 42 Pa.C.S. §5944 which prohibits psychiatrists from releasing confidential information in any civil or criminal matter without the patient's consent:

"No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, no. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client." (footnote omitted)

Plaintiffs also rely on section 111 of the Mental Health Procedures Act of July 9, 1976, P.L. 817, no. 143, 50 P.S. §7111, which provides, subject to certain enumerated exceptions that are not relevant, that: "All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone...."

If the legislation which plaintiffs cite was enacted to impose a duty on psychiatrists to protect confidential information, there would be some question as to whether a breach of this statutory duty may be a basis for tort recovery because the legislation does not provide for this remedy. However, the purpose for section 111 of the Mental Health Procedures Act and the 1989 amendment to the Judicial Code was to give legal protection to a recognized treatment standard of the psychiatric profession.

An essential feature of the relationship between the psychiatrist and the patient is the protection of the patient's expectations that the psychiatrist will not disclose information concerning the patient to third parties.

"[T]here is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment." *Commonwealth v. Kyle,* 367 Pa. Super. 484, 496, 533 A.2d 120, 126 (1987), quoting Report No. 45, Group for the Advancement of Psychiatry 92 (1960), quoted in Advisory Committee's Notes to Proposed Federal Rule of Evidence 504, 56 F.R.D. 183, 242 (1973).

In his opinion announcing the decision of the Pennsylvania Supreme Court in *In re B.,* 482 Pa. 471, 394 A.2d 419 (1978), Mr. Justice Manderino said:

"The nature of the psychotherapeutic process is such that disclosure to the therapist of the patient's most intimate emotions, fears, and fantasies is required. As pointed out in appellant's brief,

" 'People usually enter psychotherapy because they have deep-seated conflicts and impairment of functioning which limit their ability to work effectively and to enjoy fully satisfying relationships with other people. To alleviate these blocks and conflicts, the therapist asks the patient to abandon "rational thought" and to express thoughts and fears that may never have been revealed to anyone else. Indeed, these innermost thoughts are often so painful, embarrassing or shameful that the patient may never before have allowed himself to acknowledge them.'

"The patient in psychotherapy knows that such revelations will be expected if the process is to be beneficial. In laying bare one's entire self, however, the patient rightfully expects that such revelations will remain a matter of confidentiality exclusively between patient and therapist." *Id.* at 485, 394 A.2d at 425-26. (citations omitted)

Under universally accepted standards within the psychiatric profession, a psychiatrist has a duty to protect information concerning his or her patients. The purpose

of legislation protecting this information from disclosure in court proceedings is to compel the courts to recognize this professional standard. See Knapp, VandeCreek and Zirkel, *Privileged Communications for Psychotherapists in Pennsylvania: A Time for Statutory Reform*, 60 Temple L.Q. 267 (1987):

"Effective psychotherapy requires confidentiality. Confidentiality is a broad term involving control over client information in both judicial and nonjudicial settings. The shield of confidentiality allows patients to speak freely to their psychotherapists. Confidentiality is, therefore, an essential feature of effective psychotherapy. Persons with emotional problems are more likely to seek psychotherapy because they know of the confidential nature of the relationship. During psychotherapy, patients must bare their souls and tell the darkest secrets of their lives. These secrets, if revealed, could ruin the patients' marriages, cost them employment, or damage their reputations within the community.

"The confidential communications of psychotherapy patients receive both legal and nonlegal protection. *The rules of confidentiality originated in the ethical codes of the mental health professions. [Footnote 8. See American Psychiatric Association, Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry* §4 (1985)....] Subsequently, these rules received legal status through legislation or case law. (emphasis added) *Id.* at 268-69.

Since a psychiatrist under universally accepted standards within the profession has a duty to protect information concerning his or her patients, a tort recovery for injury caused by the breach of this standard of care is a traditional remedy. Recovery for breach of the confidential relationship simply shortcuts a professional negligence claim by eliminating the require-

ment on the part of the patient to present expert testimony showing that the psychiatrist's conduct deviated from the accepted standard of care.

A major justification for allowing recovery for professional misconduct is to protect the integrity of the profession by creating an incentive for professionals to render their services in a competent manner. Since the diagnostic and therapeutic phases of psychotherapeutic treatment cannot be effective unless the patient believes that the psychiatric profession will protect the information given in the course of treatment, a tort remedy for the breach of this treatment standard which is necessary for effective psychotherapy both emphasizes the confidential nature of the relationship and protects the integrity of the psychiatric profession.

I recognize that tort law should not interfere with the ability of psychiatrists to exercise reasonable professional judgment in the practice of their profession. There may be instances in which disclosure of information without the patient's consent would not violate accepted treatment standards. This may arise where a motive for the disclosure is to assist the patient or to protect the health and safety of third persons. In the present case, however, the disclosure as described in plaintiffs' complaint could in no way assist the patient or protect the health or safety of third persons. Thus, the decision in this case to allow recovery for disclosure of information gained in the course of treatment is limited to a disclosure which was not inadvertent and which was not made to assist the patient or to protect the health and safety of third persons.

This opinion is consistent with rulings in most other jurisdictions which have considered whether a patient may bring a tort suit based on the physician's voluntary disclosure of confidential information. See generally,

cases cited in *Moses v. McWilliams,* 379 Pa. Super. 150, 156 n.4, 549 A.2d 950, 953 n.4 (1988); *Id.* at 171, 549 A.2d at 962 (concurring and dissenting opinion); and *Physician's Tort Liability for Unauthorized Disclosure of Confidential Information about Patient,* 48 ALR 4th 668.[1]

## II.

I next consider defendant's claim that Ms. Ulizzi waived her right to complain about the unauthorized disclosure of confidential information because of the lawsuit which she filed several years prior to being treated by defendant. I reject this claim for two reasons. First, she did not waive her right to keep this information

---

1. Section 5.05 of the opinions of the Judicial Council of the American Medical Association (which is based on Principle IV of the AMA's Principles of Medical Ethics) provides that:

"The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree. The patient should feel free to make a full disclosure of information to the physician in order that the physician may most effectively provide needed services. The patient should be able to make this disclosure with the knowledge that the physician will respect the confidential nature of the communication. The physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law.

"The obligation to safeguard patient confidences is subject to certain exceptions which are ethically and legally justified because of overriding social considerations. Where a patient threatens to inflict serious bodily harm to another person and there is a reasonable probability that the patient may carry out the threat, the physician should take reasonable precautions for the protection of the intended victim, including notification of law enforcement authorities. Also, communicable diseases, gunshot and knife wounds, should be reported as required by applicable statutes or ordinances." (IV)

from being disclosed. Second, her former psychiatrist should not have divulged the information to a third party where the disclosure could not possibly benefit plaintiff or protect the health or safety of any third party in the absence of his former patient's permission or an order of court authorizing disclosure.

As I previously discussed, the 1989 amendment governing communications to psychiatrists specifically prohibits psychiatrists from providing information acquired in the course of professional services on behalf of a client in any civil or criminal matter without the written consent of the patient. The legislation further provides that the confidential relationship shall be the same as described by law between an attorney and a client.

Under the law governing the attorney-client privilege, a plaintiff does not waive this privilege whenever the plaintiff files a complaint raising claims that he or she will be unable to pursue without waiving the privilege. Instead, at some point in the litigation, the plaintiff will have to make a decision as to whether to waive the attorney-client privilege or to abandon the claims. The decision belongs to the client—not the lawyer. A lawyer may not without the client's permission furnish information protected by the attorney-client privilege to third parties simply because the lawyer believes that the law will not permit the former client to pursue these claims without waiving the privilege.

In the case of *Nicholaides v. Weber,* 133 Pitts. Leg. J. 260 (1985), the plaintiff's complaint alleged that as a result of defendant's negligence she had suffered emotional trauma and depression which required continuing psychiatric treatment and that she had incurred substantial and continuing expenses for psychiatric treatment for which she sought compensation. The defendant filed a

motion to compel plaintiff to produce her psychiatric records. The plaintiff acknowledged that these psychiatric records would assist the defendant in evaluating her claim for expenses for psychiatric treatment. However, she contended that her records were protected under section 111 of the Mental Health Procedures Act of July 9, 1976.[2] I held that section 111's protections may not be asserted in order to thwart another party's efforts to present a defense to the moving party's claim. Consequently, I ruled that plaintiff had the option of producing all relevant psychiatric records or abandoning her claim for expenses for psychiatric treatment:

"In conclusion, we agree with plaintiff that she has a statutory and possibly a constitutional right to protect her psychiatric records from involuntary disclosure. But she also has the right to release these records to a third party. We leave this choice to plaintiff. But unless she chooses to release her psychiatric records, she will not be permitted to pursue her claim for emotional damages requiring psychiatric care." *Id.* at 262.

Also see *Loftus v. Consolidated Rail Corp.*, 12 D.&C. 4th 357 (1991), which said:

"In conclusion, Judge Wettick agreed with the plaintiff that there was a statutory (and possibly even a constitutional) right to protect her psychiatric records from involuntary disclosure. On the other hand, he observed that she also had the right to release the records to third parties. In the end, Judge Wettick gave the choice to the plaintiff

---

2. This case was decided prior to the 1989 amendment at 42 Pa.C.S. §5944 protecting confidential communications to psychiatrists.

to either release her psychiatric records or be barred from pursuing her claim for emotional damages requiring psychiatric care. We believe that the requirement for such an election is the appropriate resolution of the discovery matter sub judice." *Id.* at 360.

In the present case, the disclosure, if accurately described in plaintiffs' complaint, is particularly egregious because Ms. Ulizzi's psychiatric condition was not a primary source of her damage claim. Plaintiffs' complaint never claimed that the injuries which she sustained would require future psychiatric treatment for which she sought compensation. In all likelihood, plaintiff was seeking through the complaint only damages for the emotional distress ordinarily associated with her injuries. These damages are recoverable without any medical testimony.

The trial before me was limited to liability issues. There would be no reason for Ms. Ulizzi to authorize disclosure of her psychiatric records unless she prevailed on liability. Furthermore, Ms. Ulizzi had not filed any expert reports in the underlying lawsuit that would be required to pursue a claim based on a psychiatric condition for which she obtained treatment in 1989. (In fact, it is unlikely that she could have done so without favorable testimony from Dr. Trellis.) Unless plaintiff either filed a report or otherwise affirmatively indicated that she intended to include a claim against the surgeon for psychiatric care that occurred almost five years after she filed her complaint, the surgeon had no right to the information which Dr. Trellis provided. Where psychiatric treatment is involved, it is particularly important that the choice be left to the patient to decide whether to disclose confidential psychiatric information or to abandon the claim. This confidential information is likely to include information provided by the patient

concerning family members and other persons with whom a patient wishes to continue a relationship. In many instances, disclosure may have such a negative impact on the patient's well-being that the patient's interests require that she abandon the claim in order to prevent disclosure of information which should remain private because of the nature of the disclosure.

## III.

I find no merit to defendant's contention that the case law granting immunity from civil liability for disclosures made in the context of a judicial proceeding bars this lawsuit. The 1989 amendment to the Judicial Code protecting communications to psychiatrists overrides this case law. This legislation specifically bars testimony without the written consent of the client. The purpose for this legislation—to give patient confidentiality priority over judicial access to relevant information—would be defeated if common law immunity was given to a witness who voluntarily provides information in clear violation of the legislation.

The common law bars civil actions based on statements made in the court proceedings so that witnesses can give complete and truthful testimony without fear of retaliatory litigation. *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323-24, 275 A.2d 53, 56 (1971); *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 516, 235 A.2d 576, 577-78 (1967); *Kemper v. Fort*, 219 Pa. 85, 67 A. 991 (1907), and *Panitz v. Behrend*, 141 Pitts. Leg. J. 203 (1993). This case law has no applicability where the law does not want a psychiatrist to become a witness or to give testimony. Under 42 Pa.C.S. §5944, a psychiatrist shall not be "examined in any civil ... matter" unless he or she has the written consent of the client or is ordered by a court.

Also, the common law immunity protects only communications made in connection with judicial proceedings that are relevant and material to the proceedings. *Clodgo by Clodgo v. Bowman,* 411 Pa. Super. 267, 271, 601 A.2d 342, 345 (1992). At the time defendant made the communication, the liability issues were the only matters scheduled for trial. Liability was seriously contested. Both parties knew that the damage issues would be addressed at a later date only if plaintiffs prevailed on liability. Also, plaintiffs had not made a specific damage claim for the 1989 hospitalization. Consequently, the information within defendant's expert report was not material and relevant to the proceedings.

## IV.

My ruling is not inconsistent with the Pennsylvania Superior Court opinion in *Moses v. McWilliams, supra.*[3] In prior litigation, Ms. Moses had instituted a medical malpractice claim against a hospital for injuries sustained from the failure to diagnose and treat a pelvic inflammatory disease. After that suit was instituted, the hospital's attorney contacted the physician (Dr. Krane) who had treated Ms. Moses after her condition worsened. (Dr. Krane was not a defendant in the malpractice suit and Ms. Moses had no complaints about the treatment that he provided.) Without Ms. Moses's knowledge or consent, Dr. Krane revealed information to the hospital's attorney that he had gained in the course of his treatment of Ms. Moses, provided to the hospital's

3. On April 29, 1991, the Pennsylvania Supreme Court promulgated Pa.R.C.P. 4003.6 which provides that information may be obtained from a treating physician of a party only upon written consent of that party or through a method of discovery authorized by the rules of civil procedure governing discovery.

attorney portions of Ms. Moses's medical records, and testified on the hospital's behalf as a fact witness.

In *Moses v. McWilliams*, Ms. Moses sued various persons, including Dr. Krane, based on Dr. Krane's disclosure of information gained in the course of his treatment of plaintiff. The Common Pleas Court dismissed the case and the Pennsylvania Superior Court affirmed. The Superior Court held that Ms. Moses had only a qualified right to privacy in her medical records which she waived by filing the civil action against the hospital. In addition, the Superior Court held that the absolute immunity from civil liability granted to witnesses in judicial proceedings barred the court from recognizing the cause of action for a breach of confidentiality as pled in that case.

The *Moses v. McWilliams* opinion is not applicable because of significant factual differences. That case involved a relationship between a patient and a physician treating the patient for a physical condition. The treatment of the patient did not depend upon the patient revealing confidential information and Ms. Moses never alleged that the information which the physician revealed involved any confidential statements of the patient.

Dr. Krane was simply a fact witness. He described what he observed concerning the patient's physical condition. This disclosure was not within the scope of the common law physician-patient privilege, codified at 42 Pa.C.S. §5929, which protects only disclosures "which shall tend to blacken the character of the patient, without the consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."

The role of a physician treating a physical condition cannot be equated with the role of a psychiatrist treating

a mental condition. See the opinion of Justice Manderino in *In Re B., supra,* which stated that:

"We conclude that in Pennsylvania, an individual's interest in preventing the disclosure of information revealed in the context of a psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is constitutionally based." *Id.* at 484, 394 A.2d at 425.

The Manderino opinion differentiated between disclosures by a physician treating a physical condition and disclosures in the context of a psychotherapist-patient relationship. In the former, most of the information is learned by the doctor through examination or observation, so confidentiality is not required for the doctor to treat the patient. On the other hand, psychotherapy treatment is dependent upon the patient's revealing confidential information. *Id.* at 479, 394 A.2d at 422.

The distinction between information gained by a physician treating a plaintiff for a physical condition and information gained in psychotherapeutic treatment has also been recognized by the Pennsylvania Legislature. As I previously discussed, 42 Pa.C.S. §5944 bars a psychiatrist from revealing any information acquired in the course of the professional services without the written consent of the patient while 42 Pa.C.S. §5929 bars physicians treating a patient for a physical condition from revealing only information that tends to blacken the character of the patient. Also, 42 Pa.C.S. §5944 bars disclosure without the written consent of the patient while section 5929 contains an exception for civil matters brought by the patient for personal injuries.

In summary, the disclosure in the present case is not governed by *Moses v. McWilliams,* because (1) this

case looks to the professional standards within the psychiatric profession for preserving confidentiality of information obtained through communications with a patient; (2) this case is governed by a broader statutory protection which expressly prohibits disclosure of any information acquired in the course of professional services without the written consent of the client; and (3) the information which was divulged in this case was not necessarily relevant to any of the claims that plaintiffs would pursue.

## V.

I also overrule defendant's preliminary objections as to Counts II and III of the complaint. Under the circumstances of this case, a fact finder could find to be extreme and outrageous defendant's voluntary disclosure of confidential information that would be detrimental to the relationship between Ms. Ulizzi and her parents.

For these reasons, I enter the following order of court:

## ORDER

And now, July 19, 1993, it is hereby ordered that defendant's preliminary objections to plaintiffs' complaint are overruled.