## Schaffer v. Donegan
*[Cite as 3 AOA 41]*

Case No. 11168
Montgomery County (2nd)
Decided May 18, 1990

*James P. Jones, 29 Iron Gate Park Drive, Centerville, Ohio 45459, Attorney for Plaintiffs-Appellants.*

*Neil F. Freund, Christopher W. Carrigg, 1000 Talbott Tower, 131 N. Ludlow Street, Dayton, Ohio 45402, Attorneys for Defendant-Appellee.*

*Per Curiam.*

This is an action, novel in character, brought against a physician in his capacity as an expert who agreed to provide assistance to and testimony on behalf of a Plaintiff in a medical malpractice case. The claim is made that the expert, by reason of changing his opinion, breached his contract to testify and his duty to provide the other parties to his contract with timely notice of his change of opinion. It is alleged that by reason of these failures the Claimants in the medical malpractice case, now Appellants herein, were damaged.

Appellants' claims were tried before a jury, which returned a verdict in favor of Appellee, Executrix of the Estate of the expert-physician, now deceased. After a full review of the briefs of the parties and the record herein, we conclude that Appellants have failed to portray error adequate and sufficient to support reversal of the judgment below, and that the judgment of the trial court should be affirmed.

I.

*Factual Posture*

Appellant, Anton J. Schaffer, is a dental surgeon. On October 5, 1978, he suffered severe injuries to his left hand in an accident at his home. The injuries included a fracture to the distal phalanx of his left index finger. The fracture was not immediately diagnosed. The injuries were particularly critical to Dr. Schaffer as he is left handed.

On October 5, 1977, Dr. Schaffer and his wife filed a medical malpractice action against the two physicians who diagnosed and treated Dr. Schaffer's injuries. In their claim the Schaffers contended that the physicians deviated from the appropriate standard of care by failing to diagnose and treat the fracture and that this deviation caused the fracture to not heal properly. They further contended that the failure to heal caused damages, including three subsequent surgeries as well as other losses.

In making their medical malpractice claim the Schaffers initially relied on the expert testimony of Dr. Kleinert, a recognized surgeon who specialized in treating problems of the left hand and who had treated Schaffer.

In November 1978, the alleged tort feasors took the deposition of Dr. Kleinert. At about the time of that deposition, the Schaffers learned that Dr. Kleinert's testimony failed to establish a *prima facie* liability on their medical claim. As a result, Plaintiffs thereafter lacked an expert to support their claim, and absolute requirement according to R.C. 2743.43.

In September 1979, the Schaffers contacted Dr. William J. Donegan, who reviewed the record of the treatment provided Schaffer and agreed to testify as a witness on his behalf in his medical malpractice claim.

On November 7, 1979, the alleged tort feasors took the deposition of Dr. Donegan. The testimony Dr. Donegan gave, if believed, was sufficient to prove medical malpractice.

The trial of the medical malpractice claim began on November 19, 1979. On November 27, the seventh day of the trial, Dr. Donegan report-

ed to the Schaffers and their counsel that he could no longer testify favorably on the issue of liability. He explained that while he was still of the opinion that the two physicians who treated Dr. Schaffer were negligent in failing to diagnose the particular fracture involved, he was no longer able to say that that negligence was the proximate cause of the injuries and losses claimed by the Schaffers.

The day following Dr. Donegan's notification, the Schaffers settled their medical malpractice claim for $50,000.

On September 24, 1980, Dr. Schaffer and his wife filed the current action against Dr. Donegan. The Schaffers make two claims:

"[b]reach of contract in failing to appear and testify in manner consistent with his promises and breach of duty is failing to notify the Schaffers more timely that he had changed his opinion and would no longer be able to testify favorably for them."

A motion for directed verdict in favor of Dr. Donegan was granted by the trial court on September 12, 1984, at the close of the Schaffers' case. That directed verdict was appealed and was heard by this court and is the subject of a prior opinion. *Schaffer* v. *Donegan* (January 21, 1986), C.A. Montgomery, No. 9108.

In our prior opinion we announced the following rule:

"As a general principle a witness has a duty to appear and testify truthfully concerning his knowledge or belief and a person who violates this duty may be required to respond in damages to the person injured by the violation. See 8 Wigmore, Evidence (1961), Section 2192 to 2195, inclusive."

We see no liability on the part of Dr. Donegan for changing his opinion on the liability issue if he did so for valid medical reasons as he testified. However, we are required to review the evidence most strongly in favor of the plaintiffs and give the plaintiffs the benefit of all reasonable inferences from that evidence.

Applying that test we found that reasonable minds could reach different conclusions on the issue of whether Dr. Donegan changed his opinion for an improper reason, and we reversed the judgment of the trial court and remanded for further proceedings. On February 26, 1986, Dr. Donegan appealed this court's decision to the Supreme Court of Ohio, which overruled his memorandum in support of jurisdiction.

The second trial of this matter commenced July 18, 1988, and concluded on July 27, 1988,

with a jury verdict in favor of Dr. Donegan. Appellants filed a timely notice of appeal on August 26, 1988.

On November 22, 1988, Dr. William J. Donegan died. A Suggestion of Death was filed in the court below on December 15, 1988. By Entry dated February 27, 1989, Julia K. Donegan, executrix of the estate of William J. Donegan was substituted as Appellee.

The parties have each fully briefed the case, and we set out below the assignments of error made by Appellants Anton J. Schaffer, *et al.*

## II.
### *Alleged Error in Jury Instructions*

Appellants argue a number of errors alleged to have occurred in the course and conduct of the trial court's charge to the jury. They are discussed below.

### A. *Burden of Proof*

The court charged the jury:

"The burden of proof is on the Plaintiffs Schaffer to prove to you by a preponderance of the evidence that Dr. Donegan changed his medical opinions for invalid medical reasons. (T. 1053).

"Appellants argue that the burden of proof was not theirs but, instead, a burden to be imposed on Appellee, at least a burden to come forward to show that he did not change his opinion for invalid medical reasons."

In our prior opinion we stated: "We see no liability on the part of Dr. Donegan for changing his opinion on the liability issue if he did so for valid medical reasons as he testified." In adopting that view we did not impose on Dr. Donegan or another person in his position the burden to show that his reasons were valid. Rather, our opinion addressed the prior directed verdict and the test that to support such a verdict reasonable minds could reach but one conclusion. Our finding was that reasonable minds could reach different conclusions on whether Dr. Donegan changed his opinion for an improper reason.

The party bearing the responsibility for the burden of proof is, as a general rule, determined by the pleadings. It is firmly established that he who affirms must prove. *Martin* v. *City of Columbus* (1920), 101 Ohio St. 1; *Shaker Medical Center Hospital* v. *Blue Cross of Northeast Ohio* (1962), 115 Ohio App. 497. Because Appellants alleged in their complaint that Dr. Donegan breached his contract and violated his duty of care in the course of changing his opinion, the burden was on Appellants to show that he did so for invalid medical reasons.

### B. *Competence of Counsel*

Appellants also object to certain language in the charge to the jury concerning the competence of Schaffers' attorneys in the malpractice case. The court stated:

"As to the damages in the malpractice case, you may also consider the *competence of the Schaffers' lawyers;* the *preparedness of the Schaffers lawyers;* the timeliness of retaining experts and providing such experts with medical information; whether the jury in the underlying case would have believed or given weight to Dr. Donegan's medical opinion had he given the opinion *desired* by the Schaffers; whether Dr. Donegan's medical opinion would have changed the eventual outcome of the underlying case; whether $50,000.00 was a reasonable settlement for the Schaffers' injuries and damages based upon the evidence presented; the quality of the evidence including the *credibility of witnesses called on behalf of the Schaffers*; and any other matter which would have affected the jury's verdict in the underlying medical malpractice case." (R 1059-1060) (Emphasis supplied by Appellee).

Appellants concede in their argument that evidence concerning the competence of Schaffers' attorneys in the malpractice case was before the jury. In that event, it is the function of the court to put that evidence into perspective through its instructions so that the jury can address the issues properly. We see no prejudice as argued by Appellants in the foregoing instruction. Appellants argue that it criticized counsel in trial of this matter below. However, it is plain in reading the instruction that the court was making reference the competence of Schaffers' counsel in the medical malpractice case. In order to properly address the issues of damages alleged by Schaffers against Donegan, the jury was required to consider that matter. We see no prejudice to Appellants.

Appellants called as a witness attorney Roger Turrell of the Montgomery County Bar, and posed to him several questions concerning the competence of Schaffers' medical malpractice counsel, Joseph Burke. The entire colloquy reads as follow:

"Q. Mr. Burke was asked about how successful he had been in his malpractice cases. Do you know Joe Burke?

"A. Yes.

"Q. How long have you been known Mr. Burke?

"A. 15 or 20 years.

"Q. Have you had occasion to work with him or against him in sufficient number of cases to make an opinion and evaluation as to his competency in handling medical malpractice cases?

"MR. FREUND: Objection. I don't --

"THE WITNESS: Yes, I think so. Uh-huh.

"THE COURT: I think I'll sustain the objection.

"BY MR. JONES:

"Q. In the time you've known Mr. Burke, Mr. Turrell, have you known Mr. Burke to be anything other than an honorable an ethical lawyer?

"MR. FREUND: Object.

"THE COURT: I think I'll sustain the objection." (T. 602-603).

Appellants argue that the question concerning whether Mr. Burke is an "honorable and ethical attorney" related to claims by Dr. Donegan that Mr. Burke had attempted to influence his opinion by offering him money to testify as requested. Any action of that kind would constitute a "corrupt act", if true. A character witness such as Attorney Turrell may be called to rebut such an accusation by testifying to the character of the impeached witness for truthfulness. Evid. R. 608(A)(2). The subject of that rehabilitative testimony is, however, strictly limited to reputation or opinion as to truthfulness or untruthfulness. The question to Mr. Burke went beyond that scope and the court did not err in sustaining the objection against it.

The question to Mr. Turrell concerning his opinion as to Mr. Burke's competency in handling medical malpractice cases was a proper question for expert opinion that may be provided under Evid. R. 701 if it will assist the trier of fact in understanding the issues. Competency of the trial counsel in the medical malpractice case was an issue for the jury. The court is sustaining the objection and excluding the question. However, competence in this context went to the issue of damages, and we see no prejudice to Appellants in the court's ruling because the jury was not required to reach the issue of damages after it found against Appellants on the issue of liability.

C. *Negligence Instruction*

Appellants also argue that the trial court erred in failing to charge the jury on the issue of negligence alleged in the complaint. Appellant contends that he offered the court instructions on the issue of negligence, and sets out at page nine of his brief the text of those instructions. The record before us does not contain copies of any such proposals in the form of rejected evidence or pleadings. However, we note at page 1042 of the transcript of proceedings the acknowledgement by the court that counsel for Appellants presented the court several proposed charges and the court's further statement that it would take them into consideration in formulating its general charge. The charge added: "Just for record purposes, I do feel that this is a breach of contract case." (T. 1042). The record is devoid of any further or separate objection by Appellants as to the failure to give their proposed charge on negligence.

Civ. R. 51(A) provides that a party may not assign as error the failure to give any instruction unless he objects to that failure before the jury retires to consider its verdict. The Ohio Supreme Court has state in *Schade* v. *Carnegie Body Company* (1982), 70 Ohio St. 2d 207, at the Syllabus of the Court:

"When a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction."

Appellant argues that the court's failure to give the charge on negligence was not only error but "plain error". The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome clearly would have been otherwise. *State* v. *Underwood* (1983), 3 Ohio St. 3d 12.

On the entire record, we cannot say that the trial court's failure to give an instruction on the issue of negligence was plain error. The trial court obviously found that the record was insufficient to support a charge to the jury on the alleged issue of negligence. To support a charge the record must not only show allegations in the complaint but evidence sufficient to constitute a *prima facie* case in support of the allegation. The court found that the evidence did not provide such support, and the trial court has some scope of discretion in making such judgments. After a review of the record, we cannot find that the trial court's judgment was an abuse of that discretion. We do not see plain error in the form of a "manifest miscarriage of justice" sufficient to reverse the trial court. *State* v. *Eiding* (1978) 57 Ohio App. 2d 111.

D. *Charges Concerning Surgeons*

Appellants object that the jury should not have been charged to find whether the surgeons in the medical malpractice action were negligent. We do not agree. Appellant suffered no injuries unless the surgeons were negligent *and* a reason-

able jury could have so concluded in the medical malpractice case. Only then could any negligence of Dr. Donegan have produced damages. The jury in the action against Dr. Donegan was, therefore, required to make such a finding and the court did not err in its instruction.

Appellants also object that in the course of its charge the court referred to the surgeons, Drs. Campbell and Johnson, as "parties to this lawsuit". Appellants are correct that the physicians were not parties in the current action, but we see no prejudice to Appellants in this error.

### E. *Public Policy*

Lastly, Appellants argue that the trial court committed error in instructing the jury that: "An agreement to testify in a certain manner, that is, favorably, to Plaintiffs, is against policy and is unenforceable." (T. 1053). We see no error in this instruction.

As we state in our prior opinion, "A witness has a duty to appear and testify truthfully concerning his knowledge or belief". Appellants may not turn that principle to support their argument that they had a right to expect that Dr. Donegan would testify as to what Appellants regarded to be the truth, and that his failure to do so constituted a breach of contract. Fundamentally, no witness can be required to testify, and no witness should be expected to testify, to anything other than the truth as he sees it and according to what he believes it to be. The same is expected of expert witnesses. While Appellants may have expected that Dr. Donegan would testify in accordance with his previous statements to them or in deposition, that did not change his paramount obligation to speak the truth. If an agreement was made that he would testify in a certain way, and we do not know that that agreement was made at all, such an agreement is void and against public policy and unenforceable.

We see no error in the trial court's instruction.

### III.
*Court's Response to a Question from the Jury*

In the course of its deliberations the jury sent a question signed by one juror, to the court. We will quote the question in its entirety:

"I can find no place in the evidence or in my recall of the testimony that states that Dr. Donegan would testify in any certain manner.

"I feel that the plaintiffs' attorneys made the *assumption* that Dr. Donegan would testify in a certain manner because of his accepting the contract to testify.

"This makes our first question -- Did Dr. Donegan change his opinion for valid medical reasons? An *invalid question*, and cannot be answered as Dr. Donegan *did not* change his mind. At the point he called the attorneys (Birke & Ensignly) (sic) he knew that his opinion would not benefit their case and called them as a courtesy rather than coming to court and testifying *against* the plaintiff.

"The subject of testimony as to causation in Dr. Donegan's initial deposition was qualified by him at that time, reserving the right to form his final opinion when he acquired *all* of the information available.

"I am unable to answer the first question 'Did Dr. Donegan change is mind for a valid medical reason?' because no one has convinced me that he has changed his mind."

In response to the question the court stated the following to the jury:

"At this stage of the proceedings, the Court cannot comment further on the evidence presented. Evidentiary questions must be resolved by your collective deliberations. The interrogatories are based upon the totality of the evidence presented. Therefore, you should answer the first interrogatory consistent wit the instructions previously given by the Court."

The court stated at (T.1074), its reason for making its response:

"Now, the reason I'm not going to give the additional instructions Mr. Jones has requested is because I believe that Dr. Donegan did admit that he changed his opinion, and perhaps others, too, but I feel that's a jury question for them to judge and sift out as best they can in consideration of the evidence they heard; so that's it. Okay."

Appellants object that the court's response to the jury was improper, and that the court should have instructed the jury that it had been admitted by Dr. Donegan that he changed his mind. However, we think this objection misconstrues the issue raised in the jury's question. A reading of the first paragraph indicates that the jury or jurors concerned were of the view that Dr. Donegan had never agreed that he would testify in any certain manner. That, of course, goes to the heart of Appellants' argument of breach of contract and was a matter for the exclusive determination of the jury. We see no error in the trial court's response to the jury.

### IV.
*Interrogatories*

Appellants also argue that the trial court erred in failing to give the jury interrogatories requested by Appellants. The two interrogatories argued are set out below.

"1. Do you find that Defendant had a valid medical reason for changing his opinion?

"2. If your answer to interrogatory No. 1 is no, then you may cease your deliberations and render your verdict in favor of Plaintiffs. However, if your answer to interrogatory No. 1 is yes, then write out the valid medical reason. Or reasons, upon which Defendant based his change of opinion."

According to the record of proceedings, the first interrogatory was given and the jury answered it "Yes". (T. 1075).

The court declined to give the second interrogatory, and we believe the court was correct. Civ. R. 49(B) limits interrogatories to "determinative issues" of law and/or fact. A determinative issue is an ultimate issue that will settle an entire controversy. *Miller* v. *McAllister* (1959), 169 Ohio St. 487. An interrogatory which necessitates a finding of merely a probative or evidentiary nature is not proper. *Davison* v. *Flowers* (1930), 123 Ohio St. 89; *Clevenger* v. *Huling* (1965), 3 Ohio St. 2d 200, 203, Taft, C.J., concurring. The form of interrogatory submitted by Appellant did not ask a finding on a determinative issue but sought to test the jury's view of the evidence, and was improper.

### V.
### *Inflammatory Final Argument*

In his closing argument counsel for Appellee argued to the jury that the outcome of Dr. Schaffer's medical malpractice claim was a result of a failure of preparation on the part of his trial counsel in that matter. Without passing judgment on the correctness of that argument, we believe it was not inflammatory or prejudicial and went to the issue of damages to be decided by the jury. We see no reversible error.

*Judgment affirmed.*

WOLFF, P.J., FAIN, J., and GRADY, J., concur.