601 A.2d 342

**Dustin CLODGO by his Mother and Natural Guardian, Jill CLODGO and Jill Clodgo in her own right, Appellants,**

v.

**Herbert S. BOWMAN, M.D.; Harrisburg Hospital; Harrisburg Hospital Laboratories; Harrisburg Hospital Hematology Center; and Harrisburg Hospital Department of Pathology.**

Superior Court of Pennsylvania.

Argued June 11, 1991.

Filed Jan. 9, 1992.

Donald L. Jones, Middletown, for appellants.

Randall G. Gale, Harrisburg, for appellees.

Before TAMILIA, POPOVICH and HESTER, JJ.

HESTER, Judge:

Jill Clodgo, both in her individual capacity and in her capacity as natural guardian and mother of Dustin Clodgo, appeals from the August 20, 1990 order granting preliminary objections in the nature of a demurrer to her complaint. Appellant instituted this action to recover for child support that she lost due to negligent performance of a court-ordered blood test conducted during a paternity proceeding by appellees, Robert S. Bowman, M.D., Harrisburg Hospital, Harrisburg Hospital Laboratories, Harrisburg Hospital Hematology Center, and Harrisburg Hospital Department of Pathology. Since we conclude that the grant the demurrer properly rested upon the application of the immunity afforded witnesses in judicial proceedings, we affirm.

On April 13, 1982, appellant filed a complaint for support of her minor son, Dustin, in the Court of Common Pleas of Dauphin County against Gregory Johnson. On November 1, 1982, the court ordered HLA Blood Tissue Typing Tests for appellant, Dustin, and Mr. Johnson at the Harrisburg Hospital Blood Bank.[1] On November 19, 1982, appellee Herbert S. Bowman, in a letter to the court, stated that he had conducted the tests and determined that Mr. Johnson

---

1. Appellees performed the tests for the court pursuant to the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. §§ 6131, *et seq.* Section 6133 of that Act provides:

   § 6133. Authority for Test.

   In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, ... order the mother, child and alleged father to submit to blood tests....

   Section 6134 of that act provides in relevant part that the "tests shall be made by experts qualified as examiners of blood types, who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties." Section 6136 of the Act governs the effect of the test results and provides that "the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence."

could be excluded as Dustin's father. On November 24, 1982, the court dismissed the paternity suit against Mr. Johnson.

Appellant filed a second complaint for support in the same court against Michael Durbin on February 24, 1983. Once again, the court ordered mother, child, and the alleged father to undergo an HLA Blood Test at Harrisburg Hospital. Dr. Bowman conducted the tests and reported that Mr. Durbin could be excluded as Dustin's father. That support action was dismissed by the court on October 15, 1984.

After the second suit was dismissed, appellant, who is a registered nurse, compared the results of the two blood tests performed by Dr. Bowman and noticed that the information in the two tests conflicted. When she brought the discrepancy to the attention of Dr. Bowman, he sent a clarification letter to the court. Dr. Bowman reported that he had improperly recorded the blood test results in the case of Mr. Johnson and erroneously excluded him as the father.

Appellant instituted a second paternity suit against Mr. Johnson on January 16, 1985. On February 21, 1985, the court dismissed the suit without giving any explanation for its decision, although the action apparently was based on the application of the doctrine of *res judicata.*

On August 6, 1985, appellant instituted the present civil action against appellees. The complaint states a cause of action for medical malpractice and requests as damages support for Dustin. Appellees filed preliminary objections to the complaint claiming that appellant had failed to state a claim against appellees by not exhausting her remedies against Mr. Johnson. On July 29, 1986, the trial court granted appellant fifteen days leave to petition the court to open the initial support action against Mr. Johnson. This action was stayed pending outcome of that action.

Appellant filed the petition to open judgment, which was granted by the trial court on February 19, 1987. Mr. Johnson appealed that decision, and on December 11, 1987,

we reversed the decision, concluding that the paternity judgment could not be reopened due appellant's failure to timely file the petition to open judgment. Appellant's petition for allowance of appeal with the Supreme Court of Pennsylvania was denied on December 15, 1988.

The current civil suit resumed between the two parties. The trial court then granted appellees' preliminary objections in the nature of a demurrer based on application of the absolute testimonial privilege for communications made in connection with judicial proceedings. This appeal followed. The issue presented is whether the absolute testimonial privilege for participants in judicial proceedings for communications relevant and pertinent to those proceedings insulates a court-appointed expert witness from liability premised upon medical malpractice. We are constrained to conclude that current caselaw compels the conclusion that a witness in a judicial proceeding is absolutely protected against any civil action that is premised upon communications that are pertinent and relevant and made in the course of a judicial proceeding and that the immunity protects appellees in this action.

The parameters of the judicial privilege were outlined by the Supreme court in *Post v. Mendel,* 510 Pa. 213, 220, 507 A.2d 351, 355 (1986), quoting *Greenberg v. Aetna Insurance Co.,* 427 Pa. 511, 514, 235 A.2d 576, 577 (1967): "When alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or in the trial or argument of a case are pertinent, relevant and material to any issue in a civil suit, there is *no civil liability* for making any of them." (Emphasis added). The privilege applies to communications which "are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Id.,* 510 Pa. at 221, 507 A.2d at 355 (emphasis omitted). If the communication falls within that category, "no action will lie" for the communication. *Id.,* 510 Pa. at 218, 507 A.2d at 354. Appellant, not Dr. Bowman, discovered Dr. Bowman's un-

forgivable error, the error that triggered this series of tragic circumstances.

In the present case, there is no doubt that the communication of the erroneous information excluding Mr. Johnson as the father was made in the course of a judicial proceeding. It was made directly to the court and litigants and pursuant to a court's order. Further, it was material and relevant to the paternity question at issue in the action. Thus, we must decide whether the privilege does not apply solely due to the fact that this action is for medical malpractice instead of a libel or defamation action.

While the immunity issue has been addressed most often in the context of defamation and related actions, our review of the relevant authority compels us to conclude that the form of the action is irrelevant to its application. *Brown v. Delaware Valley Transplant Program*, 372 Pa.Super. 629, 539 A.2d 1372 (1988), is instructive. There, a gunshot victim was discovered and transported to a hospital. The victim, who had no identification, was declared brain dead, and the hospital sought court permission to use his organs for transplants. The defendant at issue in *Brown* was the attorney who prepared the documents needed for court approval for the organ extraction, which was subsequently performed by hospital personnel. The victim's family sued for mutilation of a corpse, intentional infliction of emotional distress, civil conspiracy, malicious use of process, assault and battery, and negligent infliction of emotional distress. We upheld the trial court's dismissal of the attorney from the action which was premised upon application of the doctrine of judicial immunity.

We stated that the issue was whether the privilege should be limited to protection from liability solely for publication of defamatory material. We concluded that, "The immunity bars *actions for tortious behavior ...,* so long as it was a communication pertinent to any stage of a judicial proceeding." *Id.,* 372 Pa.Super. at 633–34, 539 A.2d at 1374 (emphasis added); *see also Moses v. McWilliams,* 379 Pa.Super. 150, 164, 549 A.2d 950, 957 (1988), wherein we collected cases and observed, "While it is true that immunity from civil liability in judicial proceedings has been applied most

frequently in defamation actions, many courts, including those in Pennsylvania, have extended the immunity from civil liability to other alleged torts when they occur in connection with judicial proceedings."

Our precedent is clear. The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceedings and was material and relevant to it, the privilege applies. Thus, while we agree with appellant's premise that this action is not premised upon defamation but is a medical malpractice action, this does not alter the conclusion that the privilege applies.

We recognize that this case presents a compelling situation. The doctor has acknowledged his incorrect recording of the relevant data, and his error was at least partially the reason that Dustin lost his child support action against Mr. Johnson.[2] However, the maxim is that hard cases make bad law, and as that maxim applies herein, we cannot allow an exception in this case to application of the immunity.

Our review of authority in other states reveals that medical malpractice actions have been instituted on the basis of expert opinions offered in judicial proceedings. If we carve out an exception to the judicial immunity for medical malpractice actions, dangerous precedent would result. Experts are called upon to offer medical opinions in a variety of situations in connection with judicial proceedings. An example is the psychiatrist asked to give an opinion of parental competency in a custody action. If we allow medical malpractice actions to survive application of the privilege, we open those experts to potential medical

2. However, we must observe that appellant was not precluded from pursuing her action against Mr. Johnson solely due to the test results. She was free to order her own testing, and the statute, as noted in footnote one, *supra*, provides for cross-examination as to the blood test results. Furthermore, from our prior decision, it appears that appellant's inability to pursue her support action against Mr. Johnson rests at least partially on her lack of due diligence in seeking to reopen the support action once she realized the test results were incorrect.

malpractice actions premised upon allegedly incorrect assessments of a parent's mental capacity to care for the children. *See, e.g., Gootee v. Lightner,* 224 Cal.App.3d 587, 274 Cal.Rptr. 697 (4 Dist.1990). Similarly, a doctor who renders an opinion as to another doctor's medical malpractice in a civil action instituted by a patient would be open to claims of malpractice based upon that expert's opinion in the civil action. This simply cannot be allowed as the privilege is necessary to prevent a witnesses from refusing to testify based on a fear of potential civil liability. The rationale for the immunity applies just as strongly to medical malpractice actions as to any other type of civil action. Accordingly, we cannot allow an exception to the doctrine of judicial immunity where the cause of action contained in the complaint is medical malpractice.

Accordingly, the order is affirmed.