632 A.2d 562

**Elaine B. PANITZ, M.D., Appellee**

v.

**Kenneth W. BEHREND and Barbara Behrend Ernsberger, Individually and T/A Behrend and Ernsberger, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 1, 1993.

Filed Oct. 13, 1993.

Kenneth R. Behrend, Pittsburgh, for appellants.

Alan S. Gold, Jenkintown, for appellee.

Before ROWLEY, President Judge, and WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Elaine B. Panitz, a medical doctor who regularly offers her services as an expert medical witness, was hired by Kenneth W. Behrend, Barbara Behrend Ernsberger and the law firm of Behrend and Ernsberger to give testimony on behalf of clients whom the law firm represented in a personal injury action. When an unfavorable verdict was returned, the lawyers refused to pay the expert witness the balance of the moneys which they allegedly had agreed to pay. Panitz sued to recover these moneys. The law firm thereupon filed an answer to the complaint which contained a counterclaim for damages resulting from the unfavorable verdict. This, it was alleged, had been caused by gross negligence and misrepresentation regarding the substance of Panitz's testimony at trial. To this counterclaim Panitz filed preliminary objections in the nature of a demurrer. When the trial court sustained the preliminary objections and dismissed the counterclaim, the defendant law firm appealed.

When reviewing an appeal from an order sustaining preliminary objections in the nature of a demurrer to a pleading, we accept as true all well-pleaded facts and all reasonable inferences to be drawn therefrom. The decision of the trial court will be affirmed only if there is no legal theory under which a recovery can be sustained on the facts pleaded. *Allegheny County v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985); *Rutherfoord v. Presbyterian–University*

*Hospital,* 417 Pa.Super. 316, 321–322, 612 A.2d 500, 502–503 (1992).

In the underlying action, the Behrend firm had represented the Charney family whose members, allegedly, had been exposed to formaldehyde in building materials and had sustained formaldehyde sensitization reactions. Panitz was employed to support the alleged cause of action. It was expected that she would be cross-examined about the lack of such sensitization in cigarette smokers who regularly are exposed to much greater concentrations of formaldehyde than were the Charneys. In preparation for trial, Panitz provided the Behrend firm with a transcript of depositions in a prior case in which she had postulated on the lack of sensitization in smokers. Panitz testified at trial, as anticipated, that in her opinion the Charneys' injuries had been caused by formaldehyde present in building materials. When cross-examined about the lack of sensitization in cigarette smokers, however, Panitz conceded that she could not explain the apparent inconsistency. After trial, Panitz explained that she had come to realize prior to trial that the reasoning upon which she had relied in earlier depositions was inaccurate.

As a general rule there is no civil liability for statements made in the pleadings or during trial or argument of a case so long as the statements are pertinent. *Post v. Mendel,* 510 Pa. 213, 221, 507 A.2d 351, 355 (1986); *Greenberg v. Aetna Ins. Co.,* 427 Pa. 511, 516, 235 A.2d 576, 577 (1967), *cert. denied, Scarselletti v. Aetna Ins. Co.,* 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968); *Moses v. McWilliams,* 379 Pa.Super. 150, 163, 549 A.2d 950, 956 (1988), *allocatur denied,* 521 Pa. 631, 558 A.2d 532 (1989); *Pelagatti v. Cohen,* 370 Pa.Super. 422, 436, 536 A.2d 1337, 1344 (1987), *allocatur denied,* 519 Pa. 667, 548 A.2d 256 (1988). The privilege, which includes judges, lawyers, litigants and witnesses, had its origin in defamation actions premised upon statements made during legal actions, but it has now been extended to include all tort actions based on statements made during judicial proceedings. Thus, in *Clodgo by Clodgo v. Bowman,* 411 Pa.Super. 267, 601 A.2d 342 (1992), the judicial or testimonial privilege was held

to insulate a court appointed medical expert witness from liability premised upon malpractice. See also: *Moses v. McWilliams, supra; Brown v. Delaware Valley Transplant Program,* 371 Pa.Super. 583, 538 A.2d 889 (1988). "The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceeding and was material and relevant to it, the privilege applies." *Clodgo by Clodgo v. Bowman, supra,* 411 Pa.Super. at 273, 601 A.2d at 345. The privilege is equally applicable where the cause of action is stated in terms of misrepresentation or a contractual requirement to exercise due care.

 The purpose for the privilege is to preserve the integrity of the judicial process by encouraging full and frank testimony. This was recognized by the Supreme Court of the United States in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), where the Court said:

> "[T]he claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Calkins v. Sumner,* 13 Wis. 193, 197 (1860). A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. See *Henderson v. Broomhead, supra,* 578–579, 157 Eng. Rep., at 968. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. See *Barnes v. McCrate,* 32 Me. 442, 446–447 (1851).... A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. See Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum.L.Rev. 463, 470 (1909).

*Id.* 460 U.S. at 332–333, 103 S.Ct. at 1114, 75 L.Ed.2d at 103–104. Similarly, the Supreme Court of Pennsylvania, in *Binder*

*v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53 (1971), explained:

> The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests.

*Binder v. Triangle Publications, Inc., supra* at 323–324, 275 A.2d at 56. See also: *Moses v. McWilliams, supra,* 379 Pa.Super. at 164, 549 A.2d at 957. The privilege, thus, serves the salutary purpose of encouraging witnesses to give frank and truthful testimony. Having testified truthfully in the judicial process, a witness should not thereafter be subjected to civil liability for the testimony which he or she has given.

■ "[W]itness immunity should and does extend to pre-trial communications. The policy of providing for reasonably unobstructed access to the relevant facts is no less compelling at the pre-trial stage of judicial proceedings." *Moses v. McWilliams, supra* 379 Pa.Super. at 166, 549 A.2d at 958. Thus, the privilege is not to be avoided by the disingenuous argument that it was not the in-court testimony that caused the loss but the pre-trial representations about what the in-court testimony would be. The privilege includes all communications "issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Post v. Mendel, supra,* 510 Pa. at 221, 507 A.2d at 355 (emphasis omitted). See also: *Kahn v. Burman,* 673 F.Supp. 210, 213 (E.D.Mich.1987), *aff'd,* 878 F.2d 1436 (6th Cir.1989); *Greenberg v. Aetna Ins. Co., supra* at 516, 235 A.2d at 577 (applying privilege to statements in pleadings); *Moses v. McWilliams, supra* (applying privilege to statements made by witness to attorney during pre-trial conference); *Pelagatti v. Cohen, supra,* 370 Pa.Super. at 436, 536 A.2d at 1344 (applying privilege to statements in pre-trial affidavits). The "expert's courtroom testimony is the last act in a long, com-

plex process of evaluation and consultation with the litigant. There is no way to distinguish the testimony from the acts and communications on which it is based." *Bruce v. Byrne–Stevens & Associates Engineers, Inc.*, 113 Wash.2d 123, 135, 776 P.2d 666, 672 (1989). See also: *Middlesex Concrete Products v. Carteret Ind. Ass'n*, 68 N.J.Super. 85, 92, 172 A.2d 22, 25 (1961).

There also is no reason for refusing to apply the privilege to friendly experts hired by a party. The policy of encouraging frank and objective testimony, without fear of civil liability therefor, "obtains irrespective of the manner by which the witness comes to court." *Bruce v. Byrne–Stevens & Associates Engineers, Inc., supra*, 113 Wash.2d at 129, 776 P.2d at 669. The primary purpose of expert testimony is not to assist one party or another in winning the case but to assist the trier of the facts in understanding complicated matters.

In *Bruce v. Byrne–Stevens & Associates Engineers, Inc., supra*, a claim was made against an engineering witness on grounds that the expert had negligently miscalculated the cost of restoring lateral support to plaintiff's land. In dismissing the action, the Supreme Court of Washington held that (1) an expert witness was entitled to the privilege even if he or she had been retained and compensated by a party rather than appointed by the court, and (2) immunity extended not only to in-court testimony but also to acts and communications which had occurred in connection with preparing that testimony. The court reasoned:

> While it may be that many expert witnesses are retained with the expectation that they will perform as "hired guns" for their employer, as a matter of law the expert serves the court. The admissibility and scope of the expert's testimony is a matter within the court's discretion. *Orion Corp. v. State*, 103 Wash.2d 441, 462, 693 P.2d 1369 (1985). That admissibility turns primarily on whether the expert's testimony will be of assistance to the finder of fact. ER 702. The court retains the discretion to question expert witnesses. ER 614(b). The mere fact that the expert is retained

and compensated by a party does not change the fact that, as a witness, he is a participant in a judicial proceeding. *Id.* 113 Wash.2d at 129–130, 776 P.2d at 669. A contrary holding, the court concluded, would result in a loss of objectivity in expert testimony generally and would discourage anyone who was not a professional witness from testifying. Although an intermediate appellate court in California has held that the privilege should not apply to a "friendly" expert, see: *Mattco Forge, Inc. v. Arthur Young & Co.,* 5 Cal.App.4th 392, 6 Cal.Rptr.2d 781 (1992), and an intermediate appellate court in Arizona has implied in dictum that it would not be inclined to extend the privilege to "friendly" experts, see: *Lavit v. Superior Court,* 173 Ariz. 96, 839 P.2d 1141 (Ariz.Ct.App.1992), we conclude that the better view is that followed by the Supreme Court of Washington. To allow a party to litigation to contract with an expert witness and thereby obligate the witness to testify only in a manner favorable to the party, on threat of civil liability, would be contrary to public policy. *Griffith v. Harris,* 17 Wis.2d 255, 116 N.W.2d 133 (1962), *cert. denied,* 373 U.S. 927, 83 S.Ct. 1530, 10 L.Ed.2d 425 (1963). See also: *Curtis v. Wolfe,* 160 Ill.App.3d 588, 513 N.E.2d 1139, 112 Ill.Dec. 530 (1987), *appeal denied,* 118 Ill.2d 542, 520 N.E.2d 384, 117 Ill.Dec. 223 (1988). "Fundamentally, no witness can be required to testify, and no witness should be expected to testify, to anything other than the truth as he [or she] sees it and according to what he [or she] believes it to be. The same is expected of expert witnesses." *Schaffer v. Donegan,* 66 Ohio App.3d 528, 538, 585 N.E.2d 854, 860 (1990), *jurisdictional motion overruled,* 55 Ohio St.3d 722, 564 N.E.2d 500 (1990). An expert witness will not be subjected to civil liability because he or she, in the face of conflicting evidence or during rigorous cross-examination, is persuaded that some or all of his or her opinion testimony has been inaccurate.

█ Because appellee was immune from civil liability for testimony which she gave, the trial court properly dismissed the counterclaim against her.

Affirmed.