**Rohrer v. Connelly**

C.P. of Dauphin County, no. 5498 S 1998.

*Kevin William Gibson,* for plaintiff.
*Lawrence Barone* and *Jeffrey B. McCarron,* for defendant Sheridan.
*James Goldsmith,* for defendant Connelly.

BEFORE: KLEINFELTER, *P.J.,* LEWIS AND CHERRY, *JJ.*

KLEINFELTER, *P.J.,* July 21, 2000—Before the court are the preliminary objections of defendants John Sheridan CPA and Sheridan & Fritz PC to plaintiff Yettanda Landis'[1] complaint in professional malpractice. As will be described more fully below, Ms. Landis retained Mr. Sheridan as an expert witness in her divorce action for the purpose of valuing her husband's assets. For the reasons which follow, defendants' preliminary objections are overruled.

Initially, we are compelled to note that defendants' "preliminary objections" are procedurally defective. Couched as a demurrer under Pa.R.C.P. 1028(a)(4),[2] defendants raise their objection based upon the theory that the witness immunity doctrine absolves Mr. Sheridan of any liability for unfavorable findings resulting from his testimony.

An immunity defense such as this is technically not the proper object of a demurrer, as it should be pleaded under new matter pursuant to Pa.R.C.P. 1030.[3] Never-

---

1. Ms. Landis was formerly known as Yettanda L. Rohrer prior to her divorce from Howard Rohrer.

2. We are left to assume that defendants are demurring to Counts IV, V and VI of the complaint since they fail to specify the objects of their demurrer either in their preliminary objections or in their supporting memorandum. Furthermore, that defendants' objection is intended as a demurrer is merely mentioned in a passing fashion in paragraph 19, the final paragraph of their preliminary objections.

3. "(a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, *im-*

theless, in the interest of expediency, we are inclined to decide the matter on the merits and proceed as if it were in fact a proper demurrer. Pa.R.C.P. 126.

As indicated above, this case finds its roots in a divorce action between Ms. Landis and a Mr. Howard Rohrer. At a hearing before the divorce master, the late Louis J. Adler, expert witnesses testified as to the value of the largest asset of the marital estate, namely Mr. Rohrer's share in a bus leasing company.[4] Among the assets for valuation were the school buses owned by the company. Standard reference in school bus valuation is the "Yellow School Bus Book," an industry handbook that sets forth base prices for used school buses that is similar to the "Blue Book" utilized in the used car market. The Yellow Book is published annually on the first day of January. Of course, as the year progresses, the values of used buses quoted in the current Yellow Book depreciate, and "seasonal adjustments," which are provided, are to be made in compensation.

On August 16, 1996, Mr. Sheridan submitted a valuation report for the bus leasing company as of December 31, 1995. In it, Mr. Sheridan relied upon the 1995 Yellow Book when he valued the school buses and made no seasonal adjustments for depreciation from January 1

---

*munity from suit,* impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading 'new matter.' A party may set forth as new matter any other material facts which are not merely denials of the averment of the preceding pleading." Pa.R.C.P. 1030. (emphasis added)

4. Mr. Rohrer's business enterprises, half of which were owned by his brother-in-law, consisted of H.E. Rohrer Inc., Rohrer Enterprises Inc., S&R Bus Leasing Inc. and S&R Bus Leasing of Harrisburg.

through December 1995. At the master's hearing, Mr. Sheridan testified that, since it was the practice of Mr. Rohrer to value his buses without seasonal adjustments, it would not have been appropriate to make such adjustments in the valuation report.

Mr. Rohrer contended that Mr. Sheridan's method was contrary to an April 19, 1996 agreement between the parties stipulating that the value of the school buses was to be obtained from "the current Yellow Book." In that light, the market values of the buses would be subject to an additional year's depreciation, since the current Yellow Book at that time was published in 1996. As a result, the value of the school buses as provided by Mr. Sheridan was $600,000 greater than Mr. Rohrer's expert's valuation. In light of the stipulation, the master rejected the report prepared by Mr. Sheridan and accepted the valuation report prepared by Mr. Rohrer's expert.

After the master's report was submitted on December 16, 1996, Ms. Landis filed exceptions, which were dismissed by this court. On appeal, the Superior Court affirmed, holding that the correct valuation of the school buses was pursuant to the 1996 Yellow Book as dictated by the stipulation.

On March 3, 1999, Ms. Landis brought this malpractice action alleging, inter alia, that Mr. Sheridan, and vicariously Sheridan & Fritz PC, were professionally negligent in the valuation of the school buses through the use of the 1995 Yellow Book instead of the 1996 edition. Defendants brought the instant preliminary objections on April 4, 1999, to which Ms. Landis replied with a memorandum on February 3, 2000. A three judge panel

of this court heard oral argument on June 15, 2000, and the matter is now ripe for disposition.

We note the standard for resolving a demurrer as espoused by our appellate courts:

"Since sustaining the demurrer results in a denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. . . . If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. . . ." *Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 619, 702 A.2d 850, 853 (1997) (quoting *The County of Allegheny v. Commonwealth of Pennsylvania,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985)).

Defendants contend that Ms. Landis has no valid cause of action since they are absolved of any liability by the witness immunity doctrine. This doctrine essentially states that witnesses may not be held liable for statements made during legal proceedings. *Moses v. McWilliams,* 379 Pa. Super. 150, 549 A.2d 950 (1988). Its purpose is to promote free and candid testimony. *Id.*

Defendants cite *Panitz v. Behrend,* 429 Pa. Super. 273, 632 A.2d 562 (1993), *appeal denied,* 539 Pa. 694, 653 A.2d 1232 (1994), in support of their position that the witness immunity doctrine is equally applicable to friendly expert witnesses. *Panitz* involved an expert witness, Dr. Panitz, who was hired by a law firm to provide testimony in a personal injury action. When the jury returned an unfavorable verdict, the firm refused to pay

Dr. Panitz as agreed, and she brought suit. In its counter-claim, the law firm alleged that the unfavorable verdict was the result of Dr. Panitz's negligence and misrepresentation during testimony since she could not explain certain inconsistencies during cross-examination. Dr. Panitz also conceded after the trial that, even before the trial, she had come to realize that the reasoning upon which she had relied was inaccurate.

The Superior Court, however, agreed with Dr. Panitz's claim of immunity and extended the witness immunity doctrine to include friendly expert witnesses. The court reasoned that the real purpose of expert testimony is to assist the jury in comprehending complex matters, not to ensure success in winning the case.

The Superior Court began its review by reiterating the well-recognized principle that "there is no civil liability for statements made in the pleadings or during trial or argument of a case so long as the statements are pertinent." *Panitz,* 429 Pa. Super. at 277, 632 A.2d at 564. The court reviewed the public policy considerations, primarily the encouragement of complete and unintimidated testimony. The court went on to opine that "there also is no reason for refusing to apply the privilege to friendly experts hired by a party. The policy of encouraging frank and objective testimony, without fear of civil liability therefor, 'obtains irrespective of the manner by which the witness comes to court.' *Bruce v. Byrne-Stevens & Associates Engineers Inc.,* . . . 113 Wash.2d [123,] at 129, 776 P.2d [666,] at 669 [(1989)]. The primary purpose of expert testimony is not to assist one party or another in winning the case but to assist the trier of the

facts in understanding complicated matters." *Panitz,* 429 Pa. Super. at 280, 632 A.2d at 565. (full citation added)

While those of us who are routinely treated to expert testimony at trial may well raise a jaundiced eye to the latter assertion,[5] it seems clear that the *Panitz* court intended that witness immunity be extended to experts— not only as to their trial testimony, but also as to their reports prepared pretrial.[6]

The *Panitz* rationale, however, received scrutiny by our Supreme Court in *LLMD of Michigan Inc. v. Jackson-Cross Co.,* 559 Pa. 297, 740 A.2d 186 (1999). We find *LLMD of Michigan Inc.* to be directly on point in illustrating the distinction between unfavorable expert testimony and professional negligence in the preparation of an expert report.

As in the case before us, *LLMD of Michigan Inc.* concerned an accountant who provided services as an expert witness and made a mathematical error in his calculation of the plaintiff's lost profits. As a result of the error, the accountant's valuation opinion was excluded

---

5. Unlike the average fact witness who finds himself summoned to court due to the fortuity of circumstances, expert witnesses are sought out and hired by litigants under the prospect that they will be able to render an opinion supportive of the contentions of a particular party to the litigation. Indeed many experts have made a business out of "forensic" testimony and advertise their services nationwide. It is safe to say that those hired experts who reach an opinion which is inimical to the interest of their clients never see the witness stand. They certainly are not made available to an adverse party "to assist the trier of the facts in understanding complicated matters." *Panitz, supra.*

6. *Panitz* again cites the Washington Supreme Court in *Bruce, supra,* for this proposition, but goes on to recognize contrary authority in California and Arizona.

and the plaintiffs were forced to settle for approximately $2,000,000 less than the actual loss suffered.

Our Supreme Court first conceded that experts must be able to articulate the basis for their opinion without fear that an unfavorable result will subject them to litigation. Notwithstanding this principle:

"We are unpersuaded, however, that those policy concerns are furthered by extending the witness immunity doctrine to professional negligence actions which are brought against an expert witness when the allegations of the negligence are not premised on the substance of the expert's opinion. We perceive a significant difference between *Panitz* and . . . in this case [where the expert] had been negligent in performing the mathematical calculations required to determine lost profits. The goal of ensuring that the path to truth is unobstructed and the judicial process is protected, by fostering an atmosphere where the expert witness will be forthright and candid in stating his or her opinion, is not advanced by immunizing an expert witness from his or her negligence in formulating that opinion. The judicial process will be enhanced only by requiring that an expert witness render services to the degree of care, skill and proficiency commonly exercised by the ordinarily skillful, careful and prudent members of their profession." *LLMD of Michigan Inc.*, 559 Pa. at 306, 740 A.2d at 191.

It is clear that *Panitz* retains little value in shielding expert witnesses from professional malpractice.[7] *Panitz*

---

7. This fact seems to be clearly recognized by the dissent in *LLMD of Michigan Inc.:* "[A]n expert witness may be sued on the basis that the expert was negligent in formulating the opinion tendered at trial." *LLMD of Michigan Inc.*, 559 Pa. at 307, 740 A.2d at 192.

remains valid only for the proposition that "An expert witness may not be held liable merely because his or her opinion is challenged by another expert or authoritative source. In those circumstances, the judicial process is enhanced by the presentation of different views. Differences of opinion will not suffice to establish liability of an expert witness for professional negligence." *LLMD of Michigan Inc.,* 559 Pa. at 307, 740 A.2d at 191.

We believe that the Supreme Court has charted the proper course in these matters. The sound public policies afforded by the immunities granted to lay witnesses—and even non-negligent expert testimony—will not be undermined by holding experts to the same standard of care in preparing for litigation as they would in their routine professional practice. In the case at bar, Ms. Landis has set forth a valid claim of professional negligence and defendants' demurrer, such as it is, is overruled.

## ORDER

And now, July 21, 2000, upon consideration of the preliminary objections, in the nature of a demurrer, of defendants John Sheridan CPA and Sheridan & Fritz PC, defendants' demurrer is hereby overruled.