# Costanzo v. Pennsylvania Turnpike Commission

C.P. of Allegheny County, no. AR00-4706.

*Bryan C. Glass,* for plaintiffs.
*Kenneth T. Newman,* for defendants.

WETTICK, *J.,* February 8, 2001—Defendants' motion to disqualify or, in the alternative, to strike expert report is the subject of this opinion and order of court.

Plaintiffs are homeowners whose property is located in the vicinity of a highway project. The installation of the highway involved blasting activities. Plaintiffs contend that the blasting activities caused structural damage to their residence. Plaintiffs have sued to recover damages through a complaint which identifies Bryan C. Glass, Esquire, as counsel of record for plaintiffs.

In preparation for an upcoming arbitration hearing, plaintiffs filed an expert report of "Kenneth P. McKay PE, JD." Mr. McKay is a professional engineer. In his report, he concluded with a reasonable degree of engineering certainty that the only explanation for structural damage which he observed was the blasting operations conducted in the vicinity of plaintiffs' property beginning in July 1999 and continuing regularly through the spring of 2000.

Defendants' motion seeks to disqualify Mr. Glass or to strike Mr. McKay's expert report because Kenneth P. McKay, the author of the October 11, 2000 expert report, is the principal in the Law Offices of K. Patrick McKay. Plaintiffs retained this law firm to represent them

in this lawsuit. Mr. Glass is an associate in Mr. McKay's law firm.

In November 6, 2000 affidavits, Kenneth P. McKay stated he was paid $400 for his expert services; the fee was paid to Mr. McKay personally, and not to the law firm; he has rendered his services as an unbiased expert and in accordance with the standards required of him as a professional engineer; plaintiffs have retained his law firm on an hourly basis; and his law firm has no contingent interest in the outcome of the case.

Plaintiffs correctly state that case law that previously barred a lawyer from representing a party if another lawyer in his or her law firm would be serving as a witness is based on disciplinary rules that have been superseded by Rule 3.7 of the Pennsylvania Rules of Professional Conduct. Under Rule 3.7(b), a lawyer may now act as an advocate at trial in which another lawyer in that lawyer's law firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9. See my ruling in *DavisAir Inc. v. Butler Air Inc.,* 147 P.L.J. 159, 40 D.&C.4th 403 (1998).

Counsel for plaintiffs states that Rule of Professional Conduct 3.4(b), which provides that payment of compensation to a witness cannot be contingent upon the content of the witness's testimony or the outcome of the case, is not applicable. Mr. McKay has already been paid for the services that he performed as an expert and the amount of money that the law firm will receive from its representation of plaintiffs is not dependent upon the outcome of the case. I agree.

However, I am granting defendants' motion barring Mr. McKay from testifying as an expert witness because of other boundaries that would be impermissibly crossed by his law firm serving as counsel in the same case where he is an expert witness.

First, Mr. McKay's obligations as plaintiffs' counsel conflict with his obligations as a professional engineer testifying as an expert. As a lawyer for plaintiffs, Mr. McKay is required to take steps that will further plaintiffs' interests to the full extent permitted by law. If he can in good faith arrive at facts and conclusions that favor his client, he may be expected to do so under the Rules of Professional Conduct. However, the standards required of him as a professional engineer are not the same. As a professional engineer, in all likelihood, he is obligated to make neutral professional judgments that would be no different if he had been retained by defendants rather than plaintiffs.

Second, the attorney-client privilege is at the core of the relationship between an attorney and his or her client. A client is entitled to have his or her attorney structure the representation in a manner that maximizes the protections afforded by the attorney-client privilege. The attorney who selects himself to serve as an expert witness for the client cannot do so; an opposing party is permitted to ask the expert witness to describe all information that was made available to the expert witness, including any conversations that the expert witness had with the party who retained this witness. Assuming other experts are available, there is a conflict of interest because the decision of the lawyer to retain himself/her-

self as an expert conflicts with the client's interest in an attorney-client relationship that preserves the attorney-client privilege.

Third, in order to encourage objective testimony, Pennsylvania law provides that an expert witness is immune from civil liability for his or her testimony. See *Panitz v. Behrend,* 429 Pa. Super. 273, 278, 632 A.2d 562, 564 (1993), where the court said:

"The purpose for the privilege is to preserve the integrity of the judicial process by encouraging full and frank testimony. This was recognized by the Supreme Court of the United States in *Briscoe v. LaHue,* 460 U.S. 325, [332-33], 103 S.Ct. 1108, [1114], 75 L.Ed.2d 96, [103-104] (1983), where the court said:

" 'The claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.' *Calkins v. Sumner,* 13 Wis. 193, 197 (1860). A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. See *Henderson v. Broomhead, supra,* 578-79, 157 Eng.Rep. [964] at 968 [(Ex. 1859)]. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. See *Barnes v. McCrate,* 32 Me. 442, 446-77 (1851) . . . . A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. See

Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum.L.Rev. 463, 470 (1909)."

The court ruled that the justification for furnishing immunity to witnesses applies to experts hired by a party because:

"There also is no reason for refusing to apply the privilege to friendly experts hired by a party. The policy of encouraging frank and objective testimony, without fear of civil liability therefor, 'obtains irrespective of the manner by which the witness comes to court.' *Bruce v. Byrne-Stevens & Associates Engineers Inc., supra,* 113 Wash.2d [123] at 129, 776 P.2d [666] at 669 [(1989)]. The primary purpose of expert testimony is not to assist one party or another in winning the case but to assist the trier of the facts in understanding complicated matters." 429 Pa. Super. at 280, 632 A.2d at 565.

Under this case law, an expert witness should not be concerned about what the jury will do. He or she should not be testifying as an advocate but, instead, as a witness who seeks to assist the trier of facts in understanding complicated matters. An attorney, on the other hand, should care about outcome. Since the attorney/expert witness may believe that he or she has an obligation to the client to arrive at conclusions which favor his or her client if it is professionally possible to do so, the attorney/expert witness is not furnishing the frank and objective testimony that the law requires.

Also, while an expert cannot be sued for furnishing opinion testimony that fails to support the position of the party calling the expert, a law firm can be sued by a former client in a legal malpractice case for pursuing a

case that the law firm should not have pursued or for selecting an expert who would, in the end, not be supporting the position of the former client. Where the expert witness is also the lawyer who was representing the former client, the law firm cannot raise the defense that it exercised reasonable care because it did not anticipate the testimony that was offered. The expert witness who is also a member of the law firm representing a party has the same inclination "to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence" that might exist where the expert witness is not provided with immunity. Consequently, the public policy that expert testimony should be furnished by witnesses who are immune from liability for testimony which they give is not met where the expert witness is one of the attorneys representing a client.

## ORDER

On February 8, 2001, it is hereby ordered that defendants' motion to strike expert report is granted. Arbitration hearing will be held on May 11, 2001 at 9 a.m.