**Debra L. GEORGE, Appellant,**

v.

**Thomas J. ELLIS, D.O., University Orthopedics Center and Bon Secours– Holy Family Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2003.

Filed March 25, 2003.

Philip A. Fabiano, Pittsburgh, for appellant.

Julia Cronin, Bellefonte, for appellee.

BEFORE: DEL SOLE, P.J., MUSMANNO and KELLY, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This appeal follows the trial court's order denying Appellant's motion for post-trial relief which sought to remove a non-suit entered in her medical malpractice case. We reverse and remand this matter for a new trial.

¶ 2 In July of 2000, Appellant filed a complaint naming Appellee Thomas J. Ellis, D.O. and University Orthopedics Center as defendants.[1] In various pretrial orders the trial court struck, cancelled and prohibited the depositions of three of Appellant's witnesses and quashed a subpoena with regard to one of these witnesses. At trial, following *voir dire* on the qualifications of Appellant's proposed expert witness, the trial court granted Appellees' motion and found the witness was not qualified as an expert within the areas at issue. Appellant had no other expert witness testimony to present, prompting the court to enter a compulsory non-suit.

¶ 3 On appeal Appellant sets forth two issues. The first challenges the ruling finding her witness, Dr. Bull, unqualified to offer an expert opinion in the matter. Appellant's second issue alleges the trial court erred in prohibiting the depositions of two witnesses and quashing a subpoena

---

1. Bon Secours–Holy Family Hospital was also named as a defendant, but the action with respect to the hospital was discontinued with prejudice and the hospital is not a party to this appeal.

for another, and for failing to grant a continuance as an alternative.

¶ 4 With respect to Appellant's first claim we note that Appellant had alleged in her complaint that Appellee, Dr. Ellis, had performed three surgical procedures on her knee after it was injured at work. The first, in July of 1998, was an arthroscopy with a drilling chondroplasty. In January of 1999, he performed on Osteochondral Antograft Transfer Surgery (OATS procedure), and, in July of 1999, another arthroscopy. Appellant's complaint alleged that the three surgeries were not indicated for her condition, were improperly performed, and that appropriate tests and consultations regarding Appellant's condition were not undertaken.

¶ 5 At trial, after opening statements, Appellant called as her first witness, Charles Bull, M.D. Dr. Bull testified regarding his education and experience and then Appellant's counsel offered Dr. Bull as an expert in the field of orthopedic medicine and orthopedic surgery. Dr. Bull was cross-examined on his qualifications following which Appellees' counsel asked the court not to certify Dr. Bull as an expert. The court ruled that the witness could not testify as an expert because he was not qualified to do so.

■ ¶ 6 It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one. *Rauch v. Mike–Mayer*, 783 A.2d 815 (Pa.Super.2001). When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. *Miller v. Brass Rail Tavern*, 541 Pa. 474, 664 A.2d 525 (1995). It is to ascertain whether the proposed witness has sufficient skill, knowledge, or experience in the field at issue as to make it appear that the opinion or inference offered will probably aid the trier of fact in the search for truth. *Bergman v. United Servs. Auto. Ass'n*, 742 A.2d 1101 (Pa.Super.1999).

■ ¶ 7 In the field of medicine, specialties sometimes overlap and a practitioner may be knowledgeable in more than one field. *Bindschusz v. Phillips*, 771 A.2d 803 (Pa.Super.2001). Doctors will have different qualifications and some doctors will be more qualified than others to provide evidence about specific medical practices. *Id.* at 809. However, it is for the jury to determine the weight to be given to expert testimony in light of the qualifications presented by the witness. *Id.*

■ ¶ 8 On direct examination Dr. Bull testified that as an occupation he practices orthopedic surgery in sports medicine and he has been licensed to practice in Ontario, Canada since 1959. N.T., 5/6/02, at 24. He stated that he still sees patients on a daily basis and performs surgery. *Id.* Dr. Bull testified that, in the past year, he performed 297 surgical procedures, and all but 11 of these were knee operations. *Id.* He testified to his educational training in Toronto and his residency in different rotations which included general surgery and orthopedics. *Id.* at 26. Since 1978, Dr. Bull has confined his practice to orthopedics and sports medicine. Dr. Bull acknowledged that he wasn't board certified, but that he has a Canadian Fellowship which "is the equivalent" and that he has been accepted by the Ontario Medical Association and has been a member of the American Orthopedic Society for Sports Medicine since 1983. *Id.* at 27. From 1972 until 1994 Dr. Bull was the team doctor for the hockey team, Team Canada, and was the team surgeon for the baseball farm team, the Toronto Marlboros, from 1966 until 1990. *Id.* at 29–30. Dr. Bull testified that he operated and ran a number of sports clinics, including one called

the Fitness Institute which he said he was instrumental in building in 1977, until 1999. *Id.* at 31. Dr. Bull testified as to his experience in speaking and writing published materials on the subject of orthopedic medicine.

¶ 9 On cross-examination, Dr. Bull again testified that he was not board certified or licensed to practice medicine in the United States. *Id.* at 38 and 45. He noted that he did perform some research involving cardiovascular surgery on dogs after he got out of medical school in 1958. *Id.* at 40. Dr. Bull was asked if it was true that he had never completed a formal residency program in orthopedic surgery as do doctors today who come out of medical school seeking to be certified as an orthopedic surgeon. *Id.* at 43. He responded that he didn't agree that he never completed a formal residency program but that counsel was correct that it is not the type of formal residency program done today. Dr. Bull testified "I didn't have to in my day." *Id.* at 44. Dr. Bull stated that he does not perform total knee replacements, but that he does "do a lot of anterior cruciate ligament repairs which is a knee reconstructive surgery." *Id.* at 41. Dr. Bull responded to questioning and confirmed that he did not perform articular reconstruction cartilage, the OATS procedure, tibial osteotomies or transplants of articular cartilage. *Id.* at 49. When questioned by the court Dr. Bull testified as to the type of knee surgery he does perform. He noted that while he does do two of the three types of surgeries at issue, he does not do the OATS procedure. He stated that while he technically could do the procedure, he believes it best that a patient be treated by a physician at a specialized center where the procedure is done consistently. *Id.* at 54. Dr. Bull testified that he routinely passes on a case in which an OATS procedure is needed to one of two surgeons in Canada, whose names he provided the court. He further stated that through reading various literature on the subject, attending meetings and courses on orthopedic sports medicine he has the education and training to know what should be done and when it should be done. *Id.* at 53.

¶ 10 Appellees' counsel objected to the certification of this witness as an expert arguing that he was not board certified, he was not licensed to practice in the United States, and has never done surgery in the United States. *Id.* at 56. Counsel further recalled to the court that Dr. Bull had not done the OATS procedure. *Id.* at 55. The court accepted this argument finding "I don't even think it's close.... This is a serious case and this guy is not qualified, period." *Id.* at 57.[2]

¶ 11 While we recognize that it is within the sound discretion of the trial court to accept a witness as an expert, *Bennett v. Graham,* 552 Pa. 205, 714 A.2d 393 (1998), we find that the court has abused that discretion in this instance by failing to adhere to the liberal standard for qualification of an expert. *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242 (1998). Experts need not be equally quali-

---

**2.** We do not have the benefit of the court's thoughts on this claim made in Appellant's post-trial motions because the trial court did not write an opinion. Instead it filed a three sentence letter which stated:

There will be no further filings in the above captioned matter.

The record in this case speaks for itself. Plaintiff's attorney, Mr. Fabiano, procrasti-

nated in this matter until the 11th hour plus and then expected defense counsel and the Court to bail him out.

To have allowed the plaintiff's doctor to testify would have been an obvious miscarriage of justice.

Letter dated 9/4/02.

fied, for it is the duty of an expert to assist the trier of fact. *Panitz v. Behrend*, 429 Pa.Super. 273, 632 A.2d 562 (1993); *Bindschusz v. Phillips*, 771 A.2d 803 (Pa.Super.2001). Further, the trial court must remain mindful that the trier of fact is not bound by the testimony of an expert witness and is under no obligation to accept the conclusions of an expert witness. *Murphey v. Hatala*, 350 Pa.Super. 433, 504 A.2d 917 (1986).

¶ 12 Dr. Bull, who admittedly began his practice at a time when the standards for specialization differed, testified to the extent of his many years of practice and the numerous knee surgeries he performed. While he acknowledged that he himself does not perform one of the three surgeries involved in this case, he testified that he is capable, but finds it wiser to refer them to another surgeon. However, he did state that his training causes him to recognize in which instances the procedure should be applied and how it should be performed.

¶ 13 We find it was error not to permit the jury to hear this testimony. Appellees' counsel would have been free to argue the merits of Dr. Bull's opinion in view of his experience to the jury. However, we conclude Dr. Bull demonstrated that he had sufficient skill, knowledge and experience to aid the jury in their determination. The jury would be free to reject this testimony, but it should have been presented to the jury for them to decide.

¶ 14 Our ruling on this first issue necessitates a remand for a new trial; thus, it is unnecessary to consider the remainder of Appellant's claims regarding the court's rulings prohibiting the depositions of other potential witnesses. However, upon review of the record we wish to comment that the trial court must recognize the difficulties often faced by counsel when seeking to schedule a deposition of an expert. For example, in this case counsel for Appellant sought to obtain the deposition of Dr. Bennett before the scheduled trial date of May 6, 2002. On April 23, 2002, Dr. Bennett, a physician who had treated Appellant, agreed to a deposition to take place on May 1, 2002, at 4:30. Defense counsel sought to schedule the matter for earlier in the day, but Dr. Bennett refused to change the time he offered. Following a telephone conference on April 29, 2002, the court struck Dr. Bennett's deposition thereby making his testimony as an expert unavailable for trial of the matter. Another witness, Dr. Port, had a deposition scheduled for May 3, 2002. The court not only prohibited the deposition but quashed the subpoena directing Dr. Port to appear at trial.

¶ 15 We caution the trial court regarding the severity of the action taken in this matter. Experts as well as counsel and the court each have very busy schedules. The realities of today's world make great demands on all these parties. Attempts must be made to accommodate, as best as possible, the particular scheduling difficulties. A severe ruling limiting the testimony available to a party should only be made after consideration of all the particular circumstances involved.

¶ 16 Order reversed. Case remanded. Jurisdiction relinquished.