Debra L. GEORGE, Appellant

v.

Thomas J. ELLIS, D.O., University Or-
thopedics Center and Bon Secours–
Holy Family Hospital, Appellees.

Superior Court of Pennsylvania.

Submitted May 15, 2006.
Filed Oct. 31, 2006.

Howard F. Messer and Philip A. Fabiano, Pittsburgh, for appellant.

Tracey G. Benson, Bellefonte for Univ. Orthopedics, appellee.

BEFORE: ORIE MELVIN, TODD and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Debra L. George appeals from an order entered on May 31, 2005, in the Court of Common Pleas, Blair County, granting Appellees' motion for summary judgment. Upon careful review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. In July of 2000, Appellant filed a complaint naming Appellee Thomas J. Ellis, D.O., University Orthopedics Center, and Bon Secours–Holy Family Hospital as defendants.[1] Appellant claimed that the three surgeries performed by Appellees for the treatment of a work-related knee injury were unnecessary and that the surgeries caused physical damage to her knee. The case was scheduled for trial on May 6, 2002. The trial court struck, cancelled, and prohibited the depositions of three of Appellant's witnesses and quashed a subpoena with regard to one of these witnesses. At trial, following *voir dire* on the qualifications of Appellant's proposed expert witness, Dr. Bull, the trial court granted Appellees' motion and found the witness was not qualified to testify as an expert. Appellant had no other expert witness testimony to pres-

---

1. By praecipe of the parties docketed on April 12, 2002, the action as to Bon Secours–Holy Family Hospital was discontinued with prejudice, and, therefore, Bon Secours–Holy Family Hospital is not a party to this appeal.

ent, prompting the court to enter a compulsory non-suit. Appellant filed post-trial motions that were denied by an order on July 31, 2002. Judgment was entered on August 15, 2002, and Appellant filed a timely appeal to this Court. In *George v. Ellis*, 820 A.2d 815 (Pa.Super.2003), this Court reversed the order and remanded the case stating that it was error to not permit the jury to hear the testimony of the expert. *Id.*, 820 A.2d at 819. This Court also concluded that the expert demonstrated that he had sufficient skill, knowledge, and experience to aid the jury in their determination. *Id.*, 820 A.2d at 819. Finally, we stated that the jury would be free to reject this testimony, but it should have been presented to the jury for them to decide. *Id.*, 820 A.2d at 819. Our Supreme Court denied Appellees' petition for allowance of appeal on October 15, 2003.

¶ 3 On February 18, 2005, Appellees filed pre-trial motions, including a Motion for Summary Judgment and a Motion in Limine arguing that the expert was not qualified to testify under the Medical Care Availability and Reduction of Error (MCARE) Act,[2] and, therefore, this case should be dismissed. The trial court heard argument on these pre-trial motions on April 1, 2005. On May 31, 2005, the trial court granted Appellees' motion for summary judgment.[3] On August 16, 2005, the trial court filed a supplementary letter citing *Bethea v. Philadelphia AFL–CIO Hospital Association*, 871 A.2d 223 (Pa.Super.2005), in support of its May 31, 2005 opinion. Appellant filed this timely appeal. The trial court ordered Appellant to file a 1925(b) statement; she complied. In response, the trial court authored a letter stating that it would rely on its May 31,

2005 opinion and nothing further would be forthcoming.

¶ 4 Appellant presents three issues for our review:

I. WHETHER THE OPINION AND RULING OF THE SUPERIOR COURT IN *GEORGE V. ELLIS, DO., ET.AL*, 820 A.2d 815 (Pa.Super.2003), THAT DR. BULL WAS COMPETENT TO TESTIFY AS AN EXPERT WITNESS IN THIS PARTICULAR CASE, DESPITE [APPELLEES'] ARGUMENT ON APPEAL THAT DR. BULL WAS NOT SKILLED IN THE PROCEDURES AT ISSUE AND THAT HE WAS NOT QUALIFIED UNDER THE M–CARE ACT, IS THE LAW OF THE CASE.

II. WHETHER THE M–CARE ACT, 40 PS § 1303. ET SEQ., SHOULD NOT BE DEEMED RETROACTIVE AND EVEN IF IT IS RETROACTIVE WHETHER AS A MATTER OF "FUNDAMENTAL FAIRNESS" SHOULD [APPELLANT] HAVE BEEN AFFORDED THE OPPORTUNITY TO SECURE A SUBSTITUTE EXPERT.

III. WHETHER DR. BULL IS OTHERWISE QUALIFIED AS AN EXPERT UNDER THE M–CARE ACT.

Appellant's brief, at 4.

¶ 5 Our standard of review is as follows:

The standard of review of a trial court's entry of summary judgment is

---

**2.** 40 P.S. § 1303, *et seq.*

**3.** The grant of summary judgment rendered the other motions moot, and, accordingly, the

trial court did not render a judgment on them.

well-established. We shall reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration. Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. On appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party.

*Fort Cherry Sch. Dist. v. Gedman,* 894 A.2d 135, 139 (Pa.Super.2006) (citations and quotation marks omitted).

■ ¶ 6 Appellant's first argument is that the opinion given by this Court in *George v. Ellis,* 820 A.2d 815 (Pa.Super.2003), is the controlling law of this case. Appellant contends that this Court determined Dr. Bull was qualified as an expert witness under the liberal common law standard that has recently been modified by the MCARE Act. Specifically, Appellant states that this Court determined Dr. Bull was qualified as an expert when the MCARE act was in effect, and, therefore, the decision of this Court is the law of the case. Appellant cites to the law of the case doctrine in support of his argument that the trial court should not have altered the decision of this Court with respect to the determination of Dr. Bull's expert qualifications.

■ ¶ 7 The law of the case doctrine is explained as follows:

Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferrer trial court.

*Commonwealth v. Viglione,* 842 A.2d 454, 461–62 (Pa.Super.2004) (citation omitted).

■ ¶ 8 The law of the case doctrine applies when a defendant is granted a new trial and precludes the defendant from relitigating the admissibility of evidence when the same issue was already raised and previously decided adversely to the defendant. *Commonwealth v. McCandless,* 880 A.2d 1262, 1267 (Pa.Super.2005) (citation omitted). However, departure from the law of the case doctrine is allowed in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Viglione,* 842 A.2d at 464.

¶ 9 Accordingly, we determine that the law of the case doctrine does not apply under these circumstances. This Court reversed the ruling of the trial court that applied the common law standard of qualifying an expert witness to conclude that Dr. Bull was unqualified to offer an expert opinion in Appellant's case. We remanded the case for a new trial based upon the finding that Dr. Bull was qualified to offer his expert opinion. On remand, Appellees made a motion for summary judgment stating that Dr. Bull is not qualified to offer his expert opinion under the MCARE Act pursuant to 40 P.S. § 1303.512, and, therefore, Appellant presents no genuine

issue of material fact with regard to her malpractice claim. This Court did not previously decide Dr. Bull's qualifications with regard to the MCARE Act and, as such, Appellees are raising a different issue before the trial court on remand. Therefore, Appellees were not precluded by the law of the case doctrine from litigating the issue of whether Dr. Bull was competent to testify as an expert witness under the MCARE Act. *McCandless,* 880 A.2d at 1267. Accordingly, Appellant's first argument fails.

■ ¶ 10 Appellant's second argument is that the MCARE Act should not be retroactively applied to Appellant's case, and, if it is retroactively applied, then Appellant should have been afforded the opportunity to secure a substitute expert. Initially, we address Appellant's contention that the MCARE Act should not be retroactively applied. The MCARE Act was approved on March 20, 2002, and became effective 60 days later on May 20, 2002. *See* 40 P.S. § 1303.512. However, the trial court determined on May 6, 2002, 14 days before the effective date of the MCARE Act, that Appellant's expert was not qualified to testify.

■ ¶ 11 The presumption against retroactivity does not preclude the application of a purely procedural statute to litigation in existence at the time of enactment. *Bethea v. Phila. AFL–CIO Hosp. Ass'n,* 871 A.2d 223, 226 (Pa.Super.2005) (citations omitted). A procedural law addresses the methods by which rights are enforced, in contrast to a substantive law, which directly affects the rights themselves. *Id.,* 871 A.2d at 226. Section 512 of the MCARE Act is a procedural law. *Id.,* 871 A.2d at 226. It describes in detail the qualifications that a medical expert must possess to testify in a medical professional liability action. *Id.,* 871 A.2d at 226. It does not deal with any substantive rights of a party but, rather, affects a procedural avenue by which a party may attempt to enforce those rights. *Id.,* 871 A.2d at 226. Accordingly, we find that the MCARE Act may be applied retroactively to Appellant's case. Therefore, Appellant's first contention fails.

■ ¶ 12 Appellant further contends that if the MCARE Act is retroactively applied then "fundamental fairness" dictates that Appellant should be afforded the opportunity to substitute a new expert and be granted a reasonable extension of time to do so. However, Appellant fails to support this statement with any argument or any citations to relevant authority in her brief. It is well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal. *Chapman–Rolle v. Rolle,* 893 A.2d 770, 774 (Pa.Super.2006) (citation omitted). We will not develop Appellant's argument for her, and, therefore, we find this issue to be waived.[4] *Id.,* 893 A.2d at

---

4. In response to Judge Todd's dissenting opinion, we note that the MCARE Act was approved on March 20, 2002, and became effective sixty days later on May 20, 2002. Appellant was aware of this Act's implications at the time of her first trial because Appellees attempted to challenge Dr. Bull's qualifications under the Act at that time. Appellees' renewed their challenge to the qualifications of Dr. Bull under the MCARE Act on February 18, 2005, by way of a motion for summary judgment. We do not find that fundamental fairness dictates that Appellant should be given the opportunity to substitute a new expert because Appellant had ample time to secure a new expert in the lengthy time frame between May 20, 2002, and February 18, 2005.

Additionally, as noted by Judge Todd in footnote two of her dissenting opinion, this Court made no mention of the MCARE Act when we found that under the common law standards for qualifying an expert, the trial court erred in not permitting the jury to hear Dr. Bull's qualifications. *George v. Ellis,* 820

774. Accordingly, Appellant's second argument fails.

¶ 13 Appellant's third argument is that Dr. Bull is qualified under the MCARE Act to offer his expert opinion.

¶ 14 This section is stated, in pertinent part, as follows:

### § 1303.512. Expert qualifications

(a) GENERAL RULE.—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

(b) MEDICAL TESTIMONY.—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

   (1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

   (2) Be engaged in or retired within the previous five years from active clinical practice or teaching. Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

(c) STANDARD OF CARE.—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

   (1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

   (2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

   (3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

(d) CARE OUTSIDE SPECIALTY.—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

   (1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

   (2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

A.2d 815, 819 (Pa.Super.2003). Had this Court stated that Dr. Bull would satisfy the qualifications under the MCARE Act for expert testimony and Appellant relied on our opinion to her detriment, then fundamental fairness would dictate that Appellant should be given the opportunity to secure a new expert. As this was not the case, we cannot distinguish this situation from any other in which a new law takes effect during the pendency of the proceedings. It is the responsibility of Appellant's counsel to review the applicable law thoroughly in preparation for trial.

(e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE AND KNOWLEDGE.—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512.

¶ 15 This Court has previously summarized Dr. Bull's testimony regarding his qualifications as an expert as follows:

On direct examination Dr. Bull testified that as an occupation he practices orthopedic surgery in sports medicine and he has been licensed to practice in Ontario, Canada since 1959. N.T., 5/6/02, at 24. He stated that he still sees patients on a daily basis and performs surgery. *Id.* Dr. Bull testified that, in the past year, he performed 297 surgical procedures, and all but 11 of these were knee operations. *Id.* He testified to his educational training in Toronto and his residency in different rotations which included general surgery and orthopedics. *Id.* at 26. Since 1978, Dr. Bull has confined his practice to orthopedics and sports medicine. Dr. Bull acknowledged that he wasn't board certified, but that he has a Canadian Fellowship which "is the equivalent" and that he has been accepted by the Ontario Medical Association and has been a member of the American Orthopedic Society for Sports Medicine since 1983. *Id.* at 27. From 1972 until 1994 Dr. Bull was the team doctor for the hockey team, Team Canada, and was the team surgeon for the baseball farm team, the Toronto Marlboros, from 1966 until 1990. *Id.* at 29–30. Dr. Bull testified that he operated and ran a number of sports clinics, including one called the Fitness Institute which he said he was instrumental in building in 1977, until 1999. *Id.* at 31. Dr. Bull testified as to his experience in speaking and writing published materials on the subject of orthopedic medicine.

On cross-examination, Dr. Bull again testified that he was not board certified or licensed to practice medicine in the United States. *Id.* at 38 and 45. He noted that he did perform some research involving cardiovascular surgery on dogs after he got out of medical school in 1958. *Id.* at 40. Dr. Bull was asked if it was true that he had never completed a formal residency program in orthopedic surgery as do doctors today who come out of medical school seeking to be certified as an orthopedic surgeon. *Id.* at 43. He responded that he didn't agree that he never completed a formal residency program but that counsel was correct that it is not the type of formal residency program done today. Dr. Bull testified "I didn't have to in my day." *Id.* at 44. Dr. Bull stated that he does not perform total knee replacements, but that he does "do a lot of anterior cruciate ligament repairs which is a knee reconstructive surgery." *Id.* at 41. Dr. Bull responded to questioning and confirmed that he did not perform articular reconstruction cartilage, the OATS procedure, tibial osteotomies or transplants of articular cartilage. *Id.* at 49. When questioned by the court Dr. Bull testified as to the type of knee surgery he does perform. He noted that while he does do two of the three types of surgeries at issue, he does not do the OATS procedure. He stated that while he technically could do the procedure, he

believes it best that a patient be treated by a physician at a specialized center where the procedure is done consistently. *Id.* at 54. Dr. Bull testified that he routinely passes on a case in which an OATS procedure is needed to one of two surgeons in Canada, whose names he provided the court. He further stated that through reading various literature on the subject, attending meetings and courses on orthopedic sports medicine he has the education and training to know what should be done and when it should be done. *Id.* at 53.

*Ellis,* 820 A.2d at 817–18.

¶ 16 We find that based upon Dr. Bull's testimony that he possesses sufficient education, training, knowledge, and experience to provide credible, competent testimony as required by section (a) of the MCARE Act. *See* 40 P.S. § 1303.512(a). In order to satisfy section (b) of the Act, Appellant must possess an unrestricted physician's license to practice medicine in any state or the District of Columbia, which, as he testified, he does not. *See* N.T. Jury trial, 5/6/02, at 38, 45. Dr. Bull satisfies the second requirement in section (b) by being engaged in active practice within the previous five years. *Id.,* at 24.

¶ 17 Appellant concedes that Dr. Bull does not possess an unrestricted physician's license to practice medicine in the United States. However, she alleges that this requirement may be waived pursuant to section (b)(2). We disagree. This waiver provision applies only if the expert is to testify on a matter *"other than the standard of care."* *See* 40 P.S. § 1303.512(b) (emphasis added). This waiver option is inapplicable to Dr. Bull's testimony because Appellant indicated that she had "Dr. Bull who will provide the standard of care...." *See* N.T. Motion in Limine, 4/1/05, at 33. As Dr. Bull has failed to meet the statutorily mandated requirement of possessing an unrestricted physician's license to practice medicine in any state or the District of Columbia pursuant to 40 P.S. § 1303.512(b)(1), and the waiver provision in section (b) is inapplicable, we find that Dr. Bull is not qualified under the MCARE Act to offer his expert opinion in Appellant's case.

¶ 18 Further, regarding Dr. Bull's qualification as an expert witness, section (c) dictates that in addition to satisfying the requirements of sections (a) and (b), an expert testifying as to a physician's standard of care must also meet three other requirements listed in this section. The first requirement is for the expert to "be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care." *See* 40 P.S. § 1303.512(c)(1). We find that Dr. Bull satisfies this requirement.

¶ 19 Dr. Bull testified that he completed a residency program in orthopedics *See* N.T. Jury trial, 5/6/02, at 26. Since 1978, Dr. Bull has confined his practice to orthopedics and sports medicine. *Id.,* at 27. Dr. Bull acknowledged that he was not board certified, but that he has a Canadian Fellowship which "is the equivalent," and that he has been accepted by the Ontario Medical Association and has been a member of the American Orthopedic Society for Sports Medicine since 1983. *Id.,* at 27. Dr. Bull testified as to his experience in speaking and writing published materials on the subject of orthopedic medicine. *Id.,* at 32–33. Accordingly, as the specific care at issue is orthopedic medicine, we find that Appellant is substantially familiar with the standard of care in this field.

¶ 20 The second requirement is for the expert to have "practice in the same subspecialty as the defendant physician or in a subspecialty which has a sub-

stantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e)." *See* 40 P.S. § 1303.512(c)(2). We have previously interpreted this section as follows:

> The MCARE Act plainly prefers, and in some cases may require, that expert testimony in professional medical malpractice cases come from witnesses with expertise in the defendant's particular subspecialty. *See* 40 P.S. 1303.512(c). We do not read the Act to require, however, that expert testimony in *all* cases must be so restricted. The 'same subspecialty' ideal contained in 1303.512(c)(2) includes an express caveat, reflecting the Legislature's decision to afford the trial court discretion to admit testimony from a doctor with expertise in another specialty that "has a similar standard of care *for the specific care at issue.*" 40 P.S. § 1303.512(c)(2) (emphasis added).

*Herbert v. Parkview Hosp.*, 854 A.2d 1285, 1294 (Pa.Super.2004).

¶ 21 Dr. Bull testified that he does not perform total knee replacements but that he does "do a lot of anterior cruciate ligament repairs which is a knee reconstructive surgery." *See* N.T. Jury trial, 5/6/02, at 51. Dr. Bull responded to questioning and confirmed that he did not perform articular reconstruction cartilage, the OATS procedure, tibial osteotomies, or transplants of articular cartilage. *Id.*, at 49. Dr. Bull noted that while he does do two of the three types of surgeries at issue, he does not do the OATS procedure. *Id.*, at 52. He stated that while he technically could do the procedure, he believes it best that a patient be treated by a physician at a specialized center where the procedure is done consistently. *Id.*, at 54. Further, Dr. Bull testified that by reading literature on the subject and by attending meetings and courses on orthopedic sports

medicine, he has the education and training to know when it is proper to perform the OATS procedure. *Id.*, at 53.

¶ 22 We find this evidence sufficient to meet the requirements set forth in 40 P.S. § 1303.512(c)(2). Although Dr. Bull does not practice in the same subspecialty at issue *(i.e.* actually performing the OATS procedure), he does practice in a subspecialty which has a substantially similar standard of care for the *specific care at issue (i.e.* orthopedic medicine in which he performs similar surgeries, determines when the OATS procedure is appropriate, and, consequently, refers the patient to other physicians). We find Dr. Bull is qualified to testify as to the appropriateness of the OATS procedure based upon the fact that although he does not actually perform the surgery, he has the expertise in a similar standard of care for the *specific care at issue* to adequately determine when the OATS procedure is appropriate. 40 P.S. § 1303.512(c)(2).

■ ¶ 23 Finally, the third requirement is that "in the event the defendant physician is certified by an approved board, [the expert must] be board certified by the same or a similar approved board, except as provided in subsection (e)." The defendant physician was board certified in 1994 in orthopedic surgery and sports medicine. *See* Deposition of Thomas James Ellis, D.O., 2/19/02, at 14. Whereas, Dr. Bull acknowledged that he is not board certified, but that he has a Canadian Fellowship which "is the equivalent," and that he has been accepted by the Ontario Medical Association and has been a member of the American Orthopedic Society for Sports Medicine since 1983. *See* N.T. Jury trial, 5/6/02, at 27. Clearly Dr. Bull and the defendant physician are not certified by the same board. However, as noted above, Dr. Bull testified that the Canadian Fellowship "is the equivalent" of board

certification. *Id.*, at 27. Further, defendant physician is certified in orthopedic surgery and sports medicine, and Dr. Bull has been accepted in the Ontario Medical Association and has been accepted by the American Orthopedic Society for Sports Medicine since 1983. *See* Deposition of Thomas James Ellis, D.O., 2/19/02; *see also* N.T. Jury trial, 5/6/02, at 27. We find the similarities between the certifications to be adequate to satisfy 40 P.S. § 1303.512(c)(3).

¶ 24 Additionally, we note that section (e) is also applicable to Dr. Bull. This section allows a court to waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience, and knowledge to provide the testimony as a result of active involvement in … medicine in a … related field of medicine within the previous five-year time period. *See* 40 P.S. § 1303.512(e). First, Dr. Bull testified that he has been licensed to practice medicine in Ontario, Canada since 1959, which meets the five year requirement of section (e). *See* N.T. Jury trial, 5/6/02, at 24. Second, we determined above that although Dr. Bull does not specifically perform the OATS procedure, that he does perform similar knee surgeries, and, in fact, refers patients to other doctors when he determines that the OATS procedure is needed. *Id.*, at 53–54. Finally, we determined above that Dr. Bull is involved in a related field of medicine, as evidenced by his testimony that he has confined his practice to orthopedics and sports medicine. *Id.*, at 27. Additionally, Dr. Bull testified that he has performed two out of the three surgeries at issue. *Id.*, at 51. Accordingly, we find that Dr. Bull satisfies the requirements of section (e) as well.

¶ 25 In conclusion, we find our previous opinion *George v. Ellis*, 820 A.2d 815 (Pa.Super.2003), determined Dr. Bull's qualifications as an expert under the common law standard. Accordingly, the trial court was not barred by the law of the case doctrine from considering the issue of whether Dr. Bull was qualified under the MCARE Act and its requirements for expert qualification. Second, we reiterate our previous ruling in *Bethea v. Phila. AFL–CIO Hosp. Ass'n*, 871 A.2d 223, 226 (Pa.Super.2005), that the MCARE Act may be retroactively applied. Further, Appellant has waived her argument regarding her request for an opportunity to secure a substitute expert for her failure to develop an argument and cite to any relevant law in support of her claim. Finally, we determine after careful analysis that Dr. Bull is not qualified as an expert under the MCARE Act because he does not possess an unrestricted physician's license to practice medicine anywhere in the United States. Accordingly, all of Appellant's arguments fail.

¶ 26 We note that summary judgment is properly granted after the close of the relevant pleadings "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report," and the moving party is entitled to judgment as a matter of law. *Grossman v. Barke*, 868 A.2d 561, 565 (Pa.Super.2005) (citation omitted). Appellant concedes that if Dr. Bull is not permitted to testify as an expert witness, then she has no other case left to present. *See* N.T. Jury trial, 5/6/02, at 57. Because Appellant was unable to establish a *prima facie* case, we find no error of law or abuse of discretion by the trial court in granting Appellees' motion for summary judgment. Accordingly, we affirm the trial court's grant of Appellees' motion for summary judgment.

¶ 27 Order affirmed.

¶ 28 TODD, J. files a Dissenting Opinion.

### DISSENTING OPINION BY TODD, J.:

¶ 1 I agree with the Majority that, under this Court's decision in *Bethea v. Philadelphia AFL–CIO Hosp. Ass'n,* 871 A.2d 223 (Pa.Super.2005), the MCARE Act ("Act") applies retroactively to preclude the testimony of Appellant's proffered expert at trial. I diverge from the opinion of my learned colleagues, however, and thus dissent because I do not believe Appellant has waived her related claim that fundamental fairness dictates that she be given the opportunity to substitute a new expert. Although Appellant makes only a brief argument in this regard (*see* Appellant's Brief at 24), I find that, for purposes of our effective appellate review, the argument requires little elaboration, and thus I conclude she has presented sufficient argument to avoid waiver. Moreover, on the merits, and for the following reasons, I believe that Appellant has been unfairly denied an opportunity to proffer a substitute expert.

¶ 2 A brief review of the procedural chronology is necessary. This case went to trial on May 6, 2002. Appellant called her expert witness, Charles Bull, M.D., to testify and, following voir dire on qualifications, Appellees moved to exclude Dr. Bull as an expert witness contending that he was not qualified as an expert generally under common law principles.[5] (N.T. Trial, 5/6/02, at 56.) The trial court granted Appellees' motion and, because Appellant had no other expert testimony to offer,

granted Appellees a compulsory non-suit on May 6, 2002. Appellant's timely appeal to this Court resulted in a reversal of the trial court's order and a remand for a new trial. *George v. Ellis,* 820 A.2d 815, 819 (Pa.Super.2003) (hereinafter *"George I "*). We held that, under common law standards for qualifying an expert witness, the trial court erred in not permitting the jury to hear Dr. Bull's testimony. *Id.*[6] Following our Supreme Court's denial of Appellees' petition for allowance of appeal, the case was scheduled for a new trial. At this point, with the weight of our decision in *George I* behind her, Appellant proceeded with the expectation that her expert would be accepted by the trial court.

¶ 3 On February 18, 2005, as the second trial approached, Appellees moved for summary judgment, arguing that the Act should be retroactively applied to exclude Dr. Bull's testimony. In her brief in opposition to Appellees' motion for summary judgment, Appellant argued that, if the Act was retroactively applied to her case, and her expert was precluded, fundamental fairness required that she be afforded the opportunity to substitute a new expert and be granted a reasonable extension of time to do so. (Plaintiff's Brief in Opposition to Motion for Summary Judgment/Motion in Limine, at 8 (R.R. 124a).) Despite its decision to apply the Act retroactively, which led to the granting of Appellees' summary judgment motion, the trial court denied Appellant's request.

¶ 4 Because the Act was not in effect at the time of the first trial, and because this Court, in *George I,* found that Appellant's expert should have been qualified to testify under common law principles, Appellant

---

**5.** Appellees also challenged the admissibility of Dr. Bull's testimony under the Act, while acknowledging that the Act would not become effective until *May 20, 2002 (14 days later). See* 40 P.S. § 1303.512.

**6.** Neither this Court, nor the trial court, made any reference to the MCARE Act.

had no reason to seek a new expert until Appellees' motion for summary judgment was filed, giving her notice for the first time that Appellees were seeking to apply the Act retroactively to prevent her expert from testifying. At that point, Appellant sought to proffer a new expert, but that request was denied. In light of the unusual procedural history of this case, I conclude that the trial court abused its discretion by failing to allow Appellant to proffer a new expert witness, and would reverse the trial court and remand on that basis.

¶ 5 Accordingly, I dissent.