J-A01026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CORI LARSEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WAYNE MEMORIAL HOSPITAL AND | : | No. 1400 EDA 2023 |
| PAIGE CASTELINO AND  JOHN DOE 1 | : | |
| AND JOHN DOE 2 AND  JOHN DOE 3 | : | |

Appeal from the Order Entered April 26, 2023
In the Court of Common Pleas of Wayne County
Civil Division at No(s):  2020-CV--00433

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED MARCH 20, 2024**

Cori Larsen appeals from the order entered in the Wayne County Court of Common Pleas on April 26, 2023, granting summary judgment in favor of Wayne Memorial Hospital ("WMH") and Paige Castelino ("Dr. Castelino") (collectively "Appellees"). After careful review, we affirm.

The trial court opinion set forth the relevant facts and procedural history of this case as follows:

> [Larsen] commenced this suit by filing a complaint on December 22, 2020 against [Appellees] for injuries she sustained in her capacity as an emergency medical technician for Cottage Hose Volunteer Ambulance Company. On December 30, 2018, [Larsen] was part of the EMS crew transporting a minor patient (initials T.D.) from Wayne Memorial Hospital (hereinafter, "WMH") in Honesdale, Pennsylvania to a psychiatric facility in Pittsburgh,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Pennsylvania. T.D. was involuntarily admitted to WMH on or about December 25, 2018 pursuant to Section 7302 of the Mental Health Procedures Act. Paige Castelino, M.D. (hereinafter, "Dr. Castelino") treated T.D. while T.D. was a patient of WMH. Dr. Castelino authored the discharge summary for T.D, as follows:

> Patient admitted for suicidal intent and depression. Patient during admission had extremely combative behavior and medicated extensively and warranted multiple attempts at restraints including physical. Patient now accepted at the in patient psych in Pittsburg [sic]. Explained and warned EMS crew that patient is extremely combative can give IM Ativan and IM Haldol as per psych recommendations en route. Requested ALS for medical personnel however EMS crew stated psych facility won't accept a sedated patient and they would be ok with BLS transport. Patient d/c at this time.

Dr. Castelino was not present during T.D.'s discharge on December 30, 2018. During the ambulance trip that day, while en route to Pittsburgh, T.D. attacked and injured [Larsen]. [Larsen]'s alleged injuries include a detached retina, fractured teeth, concussion, and contusions of the knee and ribs.

In her Complaint, [Larsen] asserts professional medical liability claims against WMH and Dr. Castelino and brings the following counts: Count I — Gross Negligence, Negligence against Dr. Castelino; Count II — Corporate Negligence, Gross Negligence against WMH; Count III — Negligent Performance of an Undertaking to Render Services, Gross Negligence against Dr. Castelino and WMH; Count IV — Negligent Misrepresentation against Dr. Castelino, and; Count V — Res Ipsa Loquitor against Dr. Castelino. After multiple continuances, this matter is currently scheduled for a jury trial to commence on May 8, 2023. Discovery has been completed pursuant to the Court's scheduling order of February 21, 2023.

On April 3, 2023, WMH filed six (6) motions requesting the [c]ourt to grant either partial summary judgment or complete summary judgment in its favor. On that same date, Dr. Castelino also filed a motion for summary judgment. Plaintiff provided timely responses thereto. On April 19, 2023, counsel appeared before this [c]ourt to conduct the scheduled pre-trial conference and argument on motions in limine. During a discussion in chambers with the undersigned and counsel, counsel represented

that they were prepared to argue the motions for summary judgment and agreed to do so if the [c]ourt's schedule permitted. This was later confirmed on the record. Consequently, on April 19, 2023, in addition to hearing argument on the parties' motions in limine and conducting pre-trial conference, the [c]ourt heard argument on the motions for summary judgment[].

Trial Court Opinion, 4/26/23, at 1-3 (footnotes omitted). The court subsequently issued an opinion and order granting summary judgment in favor of Appellees and dismissing Larsen's case with prejudice. This timely appeal followed.

In reviewing a trial court's grant of summary judgment, we are guided by the following principles:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Good v. Frankie & Eddie's Hanover Inn, LLP**, 171 A.3d 792, 795 (Pa. Super. 2017) (citation omitted).

"In order to set forth a cause of action in negligence, [a plaintiff is] required to plead sufficient facts which would establish that: (1) the doctor owed them a duty of care; (2) the doctor breached that duty; (3) they were injured; and (4) the injuries were proximately caused by the doctor's breach of duty." **Crosby v. Crosby v. Sulz**, 592 A.2d 1337, 1340 (Pa. Super. 1991)

(citation omitted). "Moreover, the plaintiff must offer an expert witness who will testify to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable standards, and that such deviation was the proximate cause of the harm suffered." ***Eaddy v. Hamaty***, 694 A.2d 639, 642 (Pa. Super. 1997) (citation and internal quotation marks omitted).

In its opinion, the court concluded that Appellees owed no duty to Larsen pursuant to a medical professional liability claim. **See** Trial Court Opinion, 4/26/23, at 5. Further, the court concluded that even if a duty were owed to Larsen, Larsen failed to meet her burden of producing a qualified expert report to establish that the care and treatment provided fell short of the required standard of care and that the breach proximately caused Larsen's injury, pursuant to the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303, *et seq*. **See id**. at 7-8.

On appeal, Larsen argues the trial court erred in granting Appellees' motion for summary judgment because (1) Appellees owed Larsen a duty, notwithstanding the fact that Larsen was not Appellees' patient, and (2) Larsen's liability expert was qualified to opine on breaches of the standard of care by Appellees.

Due to our disposition on the second issue, we need not reach the first issue – as even if we assume, arguendo, that Appellees owed Larsen a duty,

we agree with the trial court that Larsen failed to meet her burden of producing a qualified expert to opine on a breach of the standard of care by Appellees.[1]

_____

[1] Although we do not reach the issue, we note briefly that the case law cited by Larsen in support of her proposed duty of care is distinguishable and unavailing to the facts presented here. Larsen cites to **Crosby**, **Emerich v. Philadelphia Center for Human Development, Inc.**, 720 A.2d 1032 (Pa. 1998), and **Matharu v. Muir**, 86 A.3d 250 (Pa. Super. 2014), for their rejection of the broad notion that a health care provider can never owe a duty to someone other than that provider's patient. Larsen asks us to apply the rationale in a line of cases imposing liability on a physician where the plaintiffs relied on a failure to warn theory. Here, Larsen did not proceed under a failure to warn theory, as she conceded numerous times at the hearing, but rather a negligence theory.

We are unaware of any precedent that supports Larsen's proposed duty of care between a medical professional and an unrelated third-party, in terms of treatment of a mental health patient. As such, we view Larsen's arguments as a request for the imposition of a new, affirmative, common-law duty in tort. This request for imposition of a new duty is reinforced by Larsen's suggestion that we consider the multifactorial test set forth in **Althaus ex rel. Althaus v. Cohen**, 756 A.2d 1166 (Pa. 2000). However, while Larsen cites to **Althaus**, she notably does not provide any analysis of those factors herself.

> In the absence of policy arguments or a request for an opportunity to develop a record, the court did not err in applying the default approach of declining to impose upon professional undertakings new affirmative common-law duties running to third-parties to the professional relationship. Moreover, the present appeal does not afford an adequate foundation to make an informed social policy assessment which would support the imposition of a new affirmative duty on physicians to make third-party interventions.

**Seebold v. Prison Health Services, Inc.**, 57 A.3d 1232, 1250-51 (Pa. 2012). As Larsen failed to develop the record in the court below, we simply are unable to properly assess such a broad claim as imposing a new duty in tort.

Larsen contends her liability expert is qualified to offer his opinion on the standard of care of Appellees. Accordingly, Larsen argues the record contains sufficient expert testimony to survive summary judgment.

Dr. Kenneth Robinson authored a report in which he concluded "that Dr. Castelino and [WMH] failed to meet the standard of care, and that these failures caused the significant injuries sustained by [] Larsen." Brief in Support of Motion for Summary Judgment, 4/3/23, at Exhibit P.

In its opinion, the trial court concluded Dr. Robinson is not qualified to render an opinion regarding the standard of care of Appellees, explaining as follows:

> Dr. Robinson is board certified in emergency medicine while Dr. Castelino is board certified in internal medicine. Dr. Castelino, in her role as a specialist in internal medicine, treated T.D. and monitored her mental health over the course of T.D.'s multi-day commitment at WMH. Dr. Castelino is a hospitalist who coordinates the care of a patient during his or her stay. This is much different than the role of Dr. Robinson, chief of a hospital's department of emergency medicine. Further, Dr. Robinson states generally in the conclusion of his report that he has years of experience treating "a wide variety of patients" including "Behavioral Health patients." However, his curriculum vitae, while replete with experience, certifications and acclaim in the areas of emergency medical services and trauma, is silent with regard to internal medicine and experience coordinating care of mental health patients.
>
> While the Court does not discredit Dr. Robinson's accolades and expertise in the field of emergency medicine, he does not meet the qualifications of an expert in this case, specifically with regard to Section 512(c)(1)-(2). Further, the waiver allowed by Section 512(e) is not satisfied. The Court finds that Dr. Robinson is not qualified to testify as it pertains to the standard of care of Dr. Castelino and WMH in their treatment of T.D. Therefore,

- 6 -

summary judgment is appropriate on this basis because without a report from a qualified expert, [Larsen] has not met her burden.

Trial Court Opinion, 10/13/2016, at 3–4 (unnumbered).

Pursuant to the MCARE Act, a professional testifying to a physician's standard of care must satisfy several requirements.

**Expert qualifications**

(a) GENERAL RULE.—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

(b) MEDICAL TESTIMONY.—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching. Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

(c) STANDARD OF CARE.—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

(d) CARE OUTSIDE SPECIALTY.—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

(e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE AND KNOWLEDGE.—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512 ("Section 512").

Larsen readily concedes that Dr. Robinson does not meet all the requirements of Section 512(c). **See** Appellant's Brief, at 37 ("[Larsen] acknowledges that unlike Dr. Castelino, her expert is not board-certified in internal medicine. Therefore, [Larsen] cannot satisfy the requirements of Section 512(c)(3)."). Instead, Larsen argues Dr. Robinson is qualified pursuant to the waiver allowed by Section 512(e).

[Section 512(e)] allows a court to waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience, and knowledge to provide the testimony as a result of active involvement in ... medicine in a ... related field of medicine within the previous five-year time period.

**George v. Ellis**, 911 A.2d 121, 131 (Pa. Super. 2006) (citation omitted).

The trial court concluded that the waiver allowed by Section 512(e) was not satisfied. Relevantly, the court found that although Dr. Robinson "states generally in the conclusion of his report that he has years of experience treating 'a wide variety of patients' including 'Behavioral Health patients'", his curriculum vitae ("CV") did not reflect that experience. Trial Court Opinion, 4/26/23, at 8. Instead, the trial court found "his [CV], while replete with experience, certifications and acclaim in the areas of emergency medical services and trauma, is **silent** with regard to internal medicine and experience coordinating care of mental health patients." **Id**. (emphasis added).

Larsen argues the trial court failed to follow the applicable MCARE provision "by focusing on the practice of internal medicine [] in a vacuum, and not as it relates to the specific care at issue in this case." Appellant's Brief, at 21-22. However, as the plaintiff bringing a medical negligence claim, it was Larsen's burden to produce a qualified medical expert's opinion. The trial court adequately reviewed everything that was provided, which only included Dr. Robinson's report and his CV. Based on those documents, the court was unable to conclude that Dr. Robinson had the necessary background in order to provide an opinion pursuant to the waiver allowed by Section 512(e).

Larsen could have provided the court with other documentation, or testimony from Dr. Robinson at the hearing, to prove this background. After hearing scheduled arguments on the motions in limine and the issue of bifurcation, the court asked counsel for each party whether they were ready to proceed with summary judgment argument or if counsel wanted to schedule argument for another date. *See* N.T., Argument on Defendant's Motions for Summary Judgment, 4/19/23, at 4. Counsel for each party indicated they were ready to proceed at that time. *See id*. (court indicating that counsel had agreed they were ready to proceed both in chambers and on the record, and counsel for Larsen and Appellees agreeing they were ready to proceed). Larsen did not request more time to prepare or gather more evidence.

Larsen suggests that even if the trial court were inclined to grant Appellees' motions based on Dr. Robinson's qualifications, it still erred by not affording Larsen an opportunity to develop a detailed record through extensive questioning of Dr. Robinson during *voir dire* at trial. *See Vicari v. Spiegel*, 989 A.2d 1277, 1284 (Pa. 2010) ("Determining whether one field of medicine is related to another with respect to a specific issue of care is likely to require a supporting evidentiary record and questioning of the proffered expert during voir dire.").

"Summary judgment motions under new Rule 1035.2(2) are intended to prevent just such a scenario: The purpose of the rule is to eliminate cases prior to trial where a party cannot make out a claim or a defense after relevant

discovery has been completed...." ***Eaddy v. Hamaty***, 694 A.2d 639, 642-43 (Pa. Super. 1997) (citations and internal quotation marks omitted). Accordingly, an appellant "must state a *prima facie* case *before* [she] will be allowed to proceed to trial." ***Id.*** at 643 (emphasis in original).

We note that Larsen's reliance on ***Vicari*** for her analysis of Section 512(e) is misplaced. The court in ***Vicari*** was not tasked with ruling on a summary judgment motion. Rather, the case in ***Vicari*** went to jury trial, and only after the plaintiff rested his case, was an oral motion for compulsory nonsuit presented. Accordingly, the standard of review for summary judgment did not apply there. As such, we do not find ***Vicari*** guides our review here.

We have examined the certified record, including Dr. Robinson's report and CV, and agree with the trial court that Larsen has not satisfied the waiver allowed by Section (e).

Therefore, based upon our examination of the certified record, we discern no error in the court's decision to grant Appellees' summary judgment motions. Larsen needed to produce a qualified medical expert's opinion, and without one, Larsen could not establish a *prima facie* case of medical negligence. On this basis, the court properly granted Appellees' summary judgment motions. Accordingly, we affirm.

Order affirmed.

Judge Colins joins the memorandum.

President Judge Lazarus concurs in the result.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/20/2024